**IN THE UNITED STATES DISTRICT COURT**
**IN AND FOR THE SOUTHERN DISTRICT OF FLORIDA**

**Docket No.: ___________________**
**Category: Civil**
**Judge: _______________________**

**PETE VICARI GENERAL CONTRACTOR, LLC, a foreign limited liability company,**

**Plaintiff,**

**v.**

**THE OHIO CASUALTY INSURANCE COMPANY, d/b/a LIBERTY MUTUAL, a foreign insurance company, COASTAL MAINTENANCE & RESTORATION, INC., a Florida corporation, COASTAL PREFAB, INC., a Florida corporation, and CRONIN ENGINEERING, INC., a Florida corporation,**

**Defendants.**

---

## COMPLAINT

Plaintiff, Pete Vicari General Contractor, LLC ("Pete Vicari"), sues Defendants, The Ohio Casualty Insurance Company, d/b/a Liberty Mutual ("Surety"), Coastal Maintenance & Restoration, Inc. ("Coastal Maintenance"), Coastal Prefab, Inc. ("Coastal Prefab"), and Cronin Engineering, Inc. ("Cronin"), and says:

## General Allegations

### *Jurisdiction and Venue*

1. Pete Vicari is a Louisiana limited liability company licensed to conduct business in the State of Florida, with its principal place of business located in the State of Louisiana. Peter G. Vicari, member and manager of Pete Vicari, is a resident of Louisiana; Barbra T. Vicari, member and manager of Pete Vicari, is a resident of Louisiana; and Peter J. Vicari, manager of Pete Vicari, is a resident of Louisiana. As such, under 28 U.S.C. § 1332(c)(1), Pete Vicari is a citizen of Louisiana.

2. Surety is a foreign insurance company organized under laws of the State of New Hampshire with its principal place of business located in Keene, New Hampshire, and is authorized to conduct business in the State of Florida. Surety is subject to the jurisdiction of this Court by virtue of its registration to do business in this state, and by issuing the bonds described below on projects located within this state.

3. Coastal Maintenance is a Florida corporation with its principal place of business in Naples, Collier County, Florida.

4. Coastal Prefab is a Florida corporation with its principal place of business in Naples, Collier County, Florida.

5. Cronin is a Florida corporation with its principal place of business in Naples, Collier County, Florida, and is licensed in Florida as a professional engineering firm, license number 8597.

6. Pete Vicari's claims against the defendants exceed $75,000.00 as to each count alleged in this Complaint.

7. This Court has original jurisdiction in this action under 28 U.S.C. § 1332(a), which grants district courts original jurisdiction in all civil actions between citizens of different states when the amount in controversy exceeds $75,000.00.

8. This action concerns two construction projects (described below) for the renovation and repair of existing buildings located in Miami, Florida.

9. Venue is appropriate under 28 U.S.C. § 1391(b)(2), the judicial district in which a substantial part of the events or omissions giving rise to the claims at issue in this action occurred and the judicial district where the projects that are the subject of this action are located.

10. Pete Vicari is the general contractor for the projects that are the subject of this action.

11. On or about January 26, 2017, Pete Vicari entered into a subcontract agreement with Coastal Maintenance for the provision of certain labor, materials, and services for the project known as Civic Towers, located at 1855 NW 15th Avenue, Miami, Florida 33125 (the "Civic Towers Project"). A true and correct copy of the subcontract is attached as **Exhibit 1** (the "Civic Towers Subcontract").

12. On or about January 26, 2017, Pete Vicari entered into a subcontract agreement with Coastal Maintenance for the provision of certain labor, materials, and services for the project known as Civic Towers Senior, located at 1400 NW 19th Street, Miami, Florida 33125 (the "Civic Towers Senior Project"). A true and correct copy of the subcontract is attached as **Exhibit 2** (the "Civic Towers Senior Subcontract").

13. The Civic Towers Senior Project and the Civic Towers Project are collectively referred to in this Complaint as the "Projects."

14. On or about January 26, 2017, Pete Vicari entered into a purchase agreement with Coastal Prefab for the provision of certain materials for the Civic Towers Project. A true and correct copy of the purchase agreement is attached as **Exhibit 3** (the "Civic Towers Purchase Agreement").

15. On or about January 26, 2017, Pete Vicari entered into a purchase agreement with Coastal Prefab for the provision of certain materials for the Civic Towers Senior Project. A true and correct copy of the purchase agreement is attached as **Exhibit 4** (the "Civic Towers Senior Purchase Agreement").

16. The Civic Towers Subcontract, the Civic Towers Senior Subcontract, the Civic Towers Purchase Agreement, and the Civic Towers Senior Purchase Agreement are collectively referred to as the "Subcontracts."

17. The scope of work that Coastal Maintenance and Coastal Prefab contracted to perform was central and critical to the Projects that are the subject of this action. In a broad and general sense, Coastal Prefab was to fabricate certain exterior panels to replace the current exterior of the buildings, and Coastal Maintenance was to install those panels and perform related work.

18. In accordance with the terms of the Subcontracts, Coastal Maintenance and Coastal Prefab obtained a payment bond and a performance bond for each of the Subcontracts on each of the Projects. A total of eight (8) bonds were issued by Surety

with Coastal Maintenance or Coastal Prefab as the principal, which are collectively referred to as the "Bonds." True and correct copies of the Bonds are attached as follows:

a. **Exhibit 5**: Coastal Maintenance Performance Bond – Civic Towers;
b. **Exhibit 6**: Coastal Maintenance Payment Bond – Civic Towers;
c. **Exhibit 7**: Coastal Maintenance Performance Bond – Civic Towers Senior;
d. **Exhibit 8**: Coastal Maintenance Payment Bond – Civic Towers Senior;
e. **Exhibit 9**: Coastal Prefab Performance Bond – Civic Towers;
f. **Exhibit 10**: Coastal Prefab Payment Bond – Civic Towers;
g. **Exhibit 11**: Coastal Prefab Performance Bond – Civic Towers Senior;
h. **Exhibit 12**: Coastal Prefab Payment Bond – Civic Towers Senior.

19. As required by the Subcontracts, Coastal Maintenance and Coastal Prefab entered into a contract with Cronin to prepare the shop drawings for the Projects (the "Drawings").

20. Cronin prepared the Drawings and the Drawings were paid for in full by Pete Vicari and utilized for the Projects by Pete Vicari and its subcontractors, including Coastal Maintenance and Coastal Prefab.

21. Throughout the course of the Projects, Coastal Maintenance materially breached and defaulted under the Civic Towers Subcontract and the Civic Towers Senior Subcontract by, without limitation:

a. Failing to install the Sto manufactured panels in accordance with the Projects schedules causing delay in the progress of the work;

b. Failing to install the panels in accordance with the plans and specifications for the Projects, some of which failures caused damage to other pre-existing portions of the buildings;

c. Wrongfully stopping work on the Projects; and

d. Failing to supply sufficient labor to install the Sto manufactured panels.

22. Throughout the course of the Projects, Coastal Prefab materially breached and defaulted under the Civic Towers Purchase Agreement and the Civic Towers Senior Purchase Agreement by, without limitation:

a. Failing to fabricate and furnish panels in a timely manner;

b. Failing to fabricate and furnish panels free of defects or deficiencies and compliant with the plans and specifications for the Projects and applicable building codes;

c. Failure to timely furnish shop drawings to Pete Vicari for submission to the Projects' architect;

d. Failing to design the Sto manufactured panels in accordance with the plans and specifications; and

e. Wrongfully stopping production of the Sto manufactured panels.

23. As a result of Coastal Maintenance and Coastal Prefab's continual and material breaches of the Subcontracts, Pete Vicari terminated the Subcontracts for cause on June 26, 2017, in accordance with the terms and conditions of the Subcontracts.

24. Pete Vicari formally initiated the claims process under the Bonds by letter dated June 6, 2017.

25. Pete Vicari has complied with all conditions precedent to the commencement of this action or such conditions have otherwise been performed, have occurred, been fulfilled, or waived.

**Count I – Breach of Performance Bond**
**(Against Surety as to Coastal Maintenance Civic Towers Performance Bond)**

26. Pete Vicari re-alleges paragraphs 1-4, 6-11, 13, 16-18, 21, and 23-25 above, and adopts them in this Count by reference.

27. Surety issued a performance bond to guarantee the performance of Coastal Maintenance under the Civic Towers Subcontract. The performance bond is attached as Exhibit 5.

28. Coastal Maintenance's breaches of the Civic Towers Subcontract constitutes material defaults and breaches of the performance and obligations of Coastal Maintenance under the Civic Towers Subcontract for which Surety is liable.

29. Pete Vicari gave all notices required by Paragraph 3 of Exhibit 5, and has otherwise taken all actions required under Exhibit 5 and satisfied all conditions.

30. Surety has failed promptly to take the actions required by Paragraph 5 of Exhibit 5.

31. Under Paragraph 6 of Exhibit 5, Surety is in default under the bond, as a direct and proximate result of which Pete Vicari has been damaged.

32. Pete Vicari has incurred and will continue to incur damages for the completion of Coastal Maintenance's obligations under the Civic Towers Subcontract, to correct material defects and deficiencies in Coastal Maintenance's work, and otherwise to perform Pete Vicari's obligations under its contracts with the Owner as they relate to Coastal Maintenance's work.

33. Pete Vicari has also suffered consequential damages, including, without limitation, extended overhead, delay damages, lost profits, loss of bonding capacity, and other damages resulting directly and proximately from Surety's defaults under Exhibit 5.

34. Pete Vicari has retained the undersigned attorneys to bring this action and is obligated to pay them a reasonable fee for their services. Pete Vicari is entitled to recover its reasonable attorneys' fees under § 627.428, Fla. Stat., and § 627.756, Fla. Stat.

WHEREFORE, Pete Vicari requests judgment against Surety for direct and consequential damages, pre-judgment interest, attorneys' fees, and the costs of this action, and for such other and further relief as this Court deems just and proper.

**Count II – Breach of Payment Bond**
**(Against Surety as to Coastal Maintenance Civic Towers Payment Bond)**

35. Pete Vicari re-alleges paragraphs 1, 2, 4, 6-11, 13, 16-18, 21, and 23-25 above, and adopts them in this Count by reference.

36. Surety issued a payment bond to guarantee payment for labor, materials, and equipment furnished for use in the performance of the Civic Towers Subcontract. The payment bond is attached as Exhibit 6.

37. Coastal Maintenance failed to pay its subcontractors resulting in multiple claims for payment being made against Pete Vicari and its surety, Allied World Insurance Company. Coastal Maintenance's failure to pay its subcontractors constitutes a material breach of and default under the Civic Towers Subcontract for which Surety is liable.

38. Pete Vicari gave all notices required by Paragraph 3 of Exhibit 6, and has otherwise taken all actions required under Exhibit 6 and satisfied all conditions.

39. Surety failed promptly to take action under Paragraph 4 of Exhibit 6, and as a result is in breach of its obligations under the bond.

40. As a direct and proximate result of Surety's failure promptly to act under Exhibit 6, Pete Vicari has been damaged.

41. Pete Vicari has also suffered consequential damages, including, without limitation, extended overhead, delay damages, lost profits, loss of bonding capacity, and other damages resulting directly and proximately from Surety's defaults under Exhibit 6.

42. Pete Vicari has retained the undersigned attorneys to bring this action and is obligated to pay them a reasonable fee for their services. Pete Vicari is entitled to recover its reasonable attorneys' fees under § 627.428, Fla. Stat., and § 627.756, Fla. Stat.

WHEREFORE, Pete Vicari requests judgment against Surety for direct and consequential damages, pre-judgment interest, attorneys' fees, and the costs of this action, and for such other and further relief as this Court deems just and proper.

**Count III – Breach of Performance Bond**
**(Against Surety as to Coastal Prefab Civic Towers Performance Bond)**

43. Pete Vicari re-alleges paragraphs 1-3, 4, 6-10, 13, 14, 16-18, and 22-25 above, and adopts them in this Count by reference.

44. Surety issued a performance bond to guarantee the performance of Coastal Prefab under the Civic Towers Purchase Agreement. The performance bond is attached as Exhibit 9.

45. Coastal Prefab's breaches of the Civic Towers Purchase Agreement constitutes material defaults and breaches of the performance and obligations of Coastal Prefab under the Civic Towers Purchase Agreement for which Surety is liable.

46. Pete Vicari gave all notices required by Paragraph 3 of Exhibit 9, and has otherwise taken all actions required under Exhibit 9 and satisfied all conditions.

47. Surety has failed promptly to take the actions required by Paragraph 5 of Exhibit 9.

48. Under Paragraph 6 of Exhibit 9, Surety is in default under the bond, as a direct and proximate result of which Pete Vicari has been damaged.

49. Pete Vicari has incurred and will continue to incur damages for the completion of Coastal Prefab's obligations under the Civic Towers Purchase Agreement, and to correct material defects and deficiencies in Coastal Prefab's work, and otherwise to perform Pete Vicari's obligations under its contracts with the Owner as they relate to Coastal Prefab's work.

50. Pete Vicari has also suffered consequential damages, including, without limitation, extended overhead, delay damages, lost profits, loss of bonding capacity, and other damages resulting directly and proximately from Surety's defaults under Exhibit 9.

51. Pete Vicari has retained the undersigned attorneys to bring this action and is obligated to pay them a reasonable fee for their services. Pete Vicari is entitled to recover its reasonable attorneys' fees under § 627.428, Fla. Stat., and § 627.756, Fla. Stat.

WHEREFORE, Pete Vicari requests judgment against Surety for direct and consequential damages, pre-judgment interest, attorneys' fees, and the costs of this action, and for such other and further relief as this Court deems just and proper

**Count IV – Breach of Payment Bond**
**(Against Surety as to Coastal Prefab Civic Towers Payment Bond)**

52. Pete Vicari re-alleges paragraphs 1, 2, 4, 6-10, 13, 15-18, and 22-25 above, and adopts them in this Count by reference.

53. Surety issued a payment bond to guarantee Coastal Prefab's payment for labor, materials, and equipment furnished for use in the performance of the Civic Towers Purchase Agreement. The payment bond is attached as Exhibit 10.

54. Coastal Prefab failed to pay its subcontractors and material suppliers resulting in multiple claims for payment being made against Pete Vicari and its surety, Allied World Insurance Company. Coastal Prefab's failure to pay its subcontractors and material suppliers constitutes a material breach of and default under the Civic Towers Purchase Agreement for which Surety is liable.

55. Pete Vicari gave all notices required by Paragraph 3 of Exhibit 10, and has otherwise taken all actions required under Exhibit 10 and satisfied all conditions.

56. Surety failed promptly to take action under Paragraph 4 of Exhibit 10, and as a result is in breach of its obligations under Exhibit 10.

57. As a direct and proximate result of Surety's failure promptly to act under Exhibit 10, Pete Vicari has been damaged.

58. Pete Vicari has also suffered consequential damages, including, without limitation, extended overhead, delay damages, lost profits, loss of bonding capacity, and other damages resulting directly and proximately from Surety's defaults under Exhibit 10.

59. Pete Vicari has retained the undersigned attorneys to bring this action and is obligated to pay them a reasonable fee for their services. Pete Vicari is entitled to recover its reasonable attorneys' fees under § 627.428, Fla. Stat., and § 627.756, Fla. Stat.

WHEREFORE, Pete Vicari requests judgment against Surety for direct and consequential damages, pre-judgment interest, attorneys' fees, and the costs of this action, and for such other and further relief as this Court deems just and proper.

**Count V – Breach of Performance Bond**
**(Against Surety as to Coastal Maintenance Civic Towers Senior Performance Bond)**

60. Pete Vicari re-alleges paragraphs 1-3, 6-10, 12, 13, 16-18, 21, and 23-25 above, and adopts them in this Count by reference.

61. Surety issued a performance bond to guarantee the performance of Coastal Maintenance under the Civic Towers Senior Subcontract. The performance bond is attached as Exhibit 7

62. Coastal Maintenance's breaches of the Civic Towers Senior Subcontract constitutes material defaults and breaches of the performance and obligations of Coastal Maintenance under the Civic Towers Senior Subcontract for which Surety is liable.

63. Pete Vicari gave all notices required by Paragraph 3 of Exhibit 7, and has otherwise taken all actions required under Exhibit 7 and satisfied all conditions.

64. Surety has failed promptly to take the actions required by Paragraph 5 of Exhibit 7.

65. Under Paragraph 6 of Exhibit 7, Surety is in default under the bond, as a direct and proximate result of which Pete Vicari has been damaged.

66. Pete Vicari has incurred and will continue to incur damages for the completion of Coastal Maintenance's obligations under the Civic Towers Senior Subcontract, to correct material defects and deficiencies in Coastal Maintenance's work, and otherwise to perform Pete Vicari's obligations under its contracts with the Owner as they relate to Coastal Maintenance's work.

67. Pete Vicari has also suffered consequential damages, including, without limitation, extended overhead, delay damages, lost profits, loss of bonding capacity, and other damages resulting directly and proximately from Surety's defaults under Exhibit 7.

68. Pete Vicari has retained the undersigned attorneys to bring this action and is obligated to pay them a reasonable fee for their services. Pete Vicari is entitled to recover its reasonable attorneys' fees under § 627.428, Fla. Stat., and § 627.756, Fla. Stat.

WHEREFORE, Pete Vicari requests judgment against Surety for direct and consequential damages, pre-judgment interest, attorneys' fees, and the costs of this action, and for such other and further relief as this Court deems just and proper.

**Count VI – Breach of Payment Bond**
**(Against Surety as to Coastal Maintenance Civic Towers Senior Payment Bond)**

69. Pete Vicari re-alleges paragraphs 1-3, 6-10, 12, 13, 16-18, 21, and 23-25 above, and adopts them in this Count by reference.

70. Surety issued a payment bond to guarantee payment for labor, materials, and equipment furnished for use in the performance of the Civic Towers Senior Subcontract. The payment bond is attached as Exhibit 8.

71. Coastal Maintenance failed to pay its subcontractors resulting in multiple claims for payment being made against Pete Vicari and its surety, Allied World Insurance Company. Coastal Maintenance's failure to pay its subcontractors constitutes a material breach of and default under the Civic Towers Senior Subcontract for which Surety is liable.

72. Pete Vicari gave all notices required by Paragraph 3 of Exhibit 8, and has otherwise taken all actions required under Exhibit 8 and satisfied all conditions.

73. Surety failed promptly to take action under Paragraph 4 of Exhibit 8, and as a result is in breach of its obligations under Exhibit 8.

74. As a direct and proximate result of Surety's failure promptly to act under Exhibit 8, Pete Vicari has been damaged.

75. Pete Vicari has also suffered consequential damages, including, without limitation, extended overhead, delay damages, lost profits, loss of bonding capacity, and other damages resulting directly and proximately from Surety's defaults under Exhibit 8.

76. Pete Vicari has retained the undersigned attorneys to bring this action and is obligated to pay them a reasonable fee for their services. Pete Vicari is entitled to recover its reasonable attorneys' fees under § 627.428, Fla. Stat., and § 627.756, Fla. Stat.

WHEREFORE, Pete Vicari requests judgment against Surety for direct and consequential damages, pre-judgment interest, attorneys' fees, and the costs of this action, and for such other and further relief as this Court deems just and proper.

**Count VII – Breach of Performance Bond**
**(Against Surety as to Coastal Prefab Civic Towers Senior Performance Bond)**

77. Pete Vicari re-alleges paragraphs 1, 2, 4, 6-10, 13, 15-18, and 22-25 above, and adopts them in this Count by reference.

78. Surety issued a performance bond to guarantee the performance of Coastal Prefab under the Civic Towers Senior Purchase Agreement. The performance bond is attached as Exhibit 11.

79. Coastal Prefab's breaches of the Civic Towers Senior Purchase Agreement constitutes material defaults and breaches of the performance and obligations of Coastal Prefab under the Civic Towers Senior Purchase Agreement for which Surety is liable.

80. Pete Vicari gave all notices required by Paragraph 3 of Exhibit 11, and has otherwise taken all actions required under Exhibit 11 and satisfied all conditions.

81. Surety has failed promptly to take the actions required by Paragraph 5 of Exhibit 11.

82. Under Paragraph 6 of Exhibit 11, Surety is in default under the bond, as a direct and proximate result of which Pete Vicari has been damaged.

83. Pete Vicari has incurred and will continue to incur damages for the completion of Coastal Prefab's obligations under the Civic Towers Senior Purchase Agreement, and to correct material defects and deficiencies in Coastal Prefab's work, and otherwise to perform Pete Vicari's obligations under its contracts with the Owner as they relate to Coastal Prefab's work.

84. Pete Vicari has also suffered consequential damages, including, without limitation, extended overhead, delay damages, lost profits, loss of bonding capacity, and other damages resulting directly and proximately from Surety's defaults under Exhibit 11.

85. Pete Vicari has retained the undersigned attorneys to bring this action and is obligated to pay them a reasonable fee for their services. Pete Vicari is entitled to recover its reasonable attorneys' fees under § 627.428, Fla. Stat., and § 627.756, Fla. Stat.

WHEREFORE, Pete Vicari requests judgment against Surety for direct and consequential damages, pre-judgment interest, attorneys' fees, and the costs of this action, and for such other and further relief as this Court deems just and proper

**Count VIII – Breach of Payment Bond**
**(Against Surety as to Coastal Prefab Civic Towers Senior Payment Bond)**

86. Pete Vicari re-alleges paragraphs 1, 2, 4, 6-10, 13, 15-18, and 22-25 above, and adopts them in this Count by reference.

87. Surety issued a payment bond to guarantee payment for labor, materials, and equipment furnished for use in the performance of the Civic Towers Senior Purchase Agreement. The payment bond is attached as Exhibit 12.

88. Coastal Prefab failed to pay its subcontractors and material suppliers resulting in multiple claims for payment being made against Pete Vicari and its surety, Allied World Insurance Company. Coastal Prefab's failure to pay its subcontractors and material suppliers constitutes a material breach of and default under the Civic Towers Senior Purchase Agreement for which Surety is liable.

89. Pete Vicari gave all notices required by Paragraph 3 of Exhibit 12, and has otherwise taken all actions required under Exhibit 12 and satisfied all conditions.

90. Surety failed promptly to take action under Paragraph 4 of Exhibit 12, and as a result is in breach of its obligations under Exhibit 12.

91. As a direct and proximate result of Surety's failure promptly to act under Exhibit 12, Pete Vicari has been damaged.

92. Pete Vicari has also suffered consequential damages, including, without limitation, extended overhead, delay damages, lost profits, loss of bonding capacity, and other damages resulting directly and proximately from Surety's defaults under Exhibit 12.

93. Pete Vicari has retained the undersigned attorneys to bring this action and is obligated to pay them a reasonable fee for their services. Pete Vicari is entitled to recover its reasonable attorneys' fees under § 627.428, Fla. Stat., and § 627.756, Fla. Stat.

WHEREFORE, Pete Vicari requests judgment against Surety for direct and consequential damages, pre-judgment interest, attorneys' fees, and the costs of this action, and for such other and further relief as this Court deems just and proper.

**Count IX – Breach of Contract**
**(Against Coastal Maintenance as to Civic Towers Project)**

94. Pete Vicari re-alleges paragraphs 1-3, 6-11, 13, 16-18, 21, 23 and 25 above, and adopts them in this Count by reference.

95. Coastal Maintenance materially breached the Civic Towers Subcontract by failing to comply with the terms and conditions of the Civic Towers Subcontract as alleged above, failing to pay its subcontractors, suppliers, and laborers, and wrongfully stopping work on the Civic Towers Project. The Civic Towers Subcontract is attached as Exhibit 1.

96. As a direct and proximate result of Coastal Maintenance's material breach of the Civic Towers Subcontract, Pete Vicari has been damaged.

97. Pete Vicari has also suffered consequential damages, including, without limitation, extended overhead, delay damages, lost profits, loss of bonding capacity, and other damages resulting directly and proximately from Coastal Maintenance's defaults under the Civic Towers Subcontract.

98. Pete Vicari has retained the undersigned attorneys to bring this action and is obligated to pay them a reasonable fee for their services. Pete Vicari is entitled to recover its reasonable attorneys' fees under Article XXI (c) of the Civic Towers Subcontract.

WHEREFORE, Pete Vicari requests judgment against Coastal Maintenance for direct and consequential damages, pre-judgment interest, attorneys' fees, and the costs of this action, and for such other and further relief as this Court deems just and proper.

**Count X – Breach of Contract**
**(Against Coastal Maintenance as to Civic Towers Senior Project)**

99. Pete Vicari re-alleges paragraphs 1-3, 6-10, 12, 13, 16-18, 21, 23 and 25 above, and adopts them in this Count by reference.

100. Coastal Maintenance materially breached the Civic Towers Senior Subcontract by failing to comply with the terms and conditions of the Civic Towers Senior Subcontract as alleged above, failing to pay its subcontractors, suppliers, and laborers, and wrongfully stopping work on the Civic Towers Senior Project. The Civic Towers Senior Subcontract is attached as Exhibit 2.

101. As a direct and proximate result of Coastal Maintenance's material breach of the Civic Towers Senior Subcontract, Pete Vicari has been damaged.

102. Pete Vicari has also suffered consequential damages, including, without limitation, extended overhead, delay damages, lost profits, loss of bonding capacity, and other damages resulting directly and proximately from Coastal Maintenance's defaults under Civic Towers Senior Subcontract.

103. Pete Vicari has retained the undersigned attorneys to bring this action and is obligated to pay them a reasonable fee for their services. Pete Vicari is entitled to recover its reasonable attorneys' fees under Article XXI (c) of the Civic Towers Senior Subcontract.

WHEREFORE, Pete Vicari requests judgment against Coastal Maintenance for direct and consequential damages, pre-judgment interest, attorneys' fees, and the costs of this action, and for such other and further relief as this Court deems just and proper.

**Count XI – Breach of Contract**
**(Against Coastal Prefab as to Civic Towers Project)**

104. Pete Vicari re-alleges paragraphs 1, 2, 4, 6-10, 13, 14, 16-18, 22, 23, and 25 above, and adopts them in this Count by reference.

105. Coastal Prefab materially breached the Civic Towers Purchase Agreement by failing to fabricate and supply the prefabricated manufactured panels in accordance with the terms of the Civic Towers Purchase Agreement, failing to pay its subcontractors and material suppliers, wrongfully stopping production of the panels, and otherwise as alleged above. The Civic Towers Purchase Agreement is attached as Exhibit 3.

106. As a direct and proximate result of Coastal Prefab's material breach of the Civic Towers Purchase Agreement, Pete Vicari has been damaged.

107. Pete Vicari has also suffered consequential damages, including, without limitation, extended overhead, delay damages, lost profits, loss of bonding capacity,

and other damages resulting directly and proximately from Coastal Prefab's defaults under the Civic Towers Purchase Agreement.

108. Pete Vicari has retained the undersigned attorneys to bring this action and is obligated to pay them a reasonable fee for their services. Pete Vicari is entitled to recover its reasonable attorneys' fees under the terms and conditions of the Civic Towers Purchase Agreement.

WHEREFORE, Pete Vicari requests judgment against Coastal Prefab for direct and consequential damages, pre-judgment interest, attorneys' fees, and the costs of this action, and for such other and further relief as this Court deems just and proper.

**Count XII – Breach of Contract**
**(Against Coastal Prefab as to Civic Towers Senior Project)**

109. Pete Vicari re-alleges paragraphs 1, 2, 4, 6-10, 13, 15-18, 22, 23 and 25 above, and adopts them in this Count by reference.

110. Coastal Prefab materially breached the Civic Towers Senior Purchase Agreement by failing to fabricate and supply the prefabricated manufactured panels in accordance with the terms of the Civic Towers Senior Purchase Agreement, failing to pay its subcontractors and material suppliers, wrongfully stopping production of the panels, and otherwise as alleged above. The Civic Towers Senior Purchase Agreement is attached as Exhibit 4.

111. As a direct and proximate result of Coastal Prefab's material breach of the Civic Towers Senior Purchase Agreement, Pete Vicari has been damaged.

112. Pete Vicari has also suffered consequential damages, including, without limitation, extended overhead, delay damages, lost profits, loss of bonding capacity, and other damages resulting directly and proximately from Coastal Prefab's defaults under the Civic Towers Senior Purchase Agreement.

113. Pete Vicari has retained the undersigned attorneys to bring this action and is obligated to pay them a reasonable fee for their services. Pete Vicari is entitled to recover its reasonable attorneys' fees under the terms and conditions of the Civic Towers Senior Purchase Agreement.

WHEREFORE, Pete Vicari requests judgment against Coastal Prefab for direct and consequential damages, pre-judgment interest, attorneys' fees, and the costs of this action, and for such other and further relief as this Court deems just and proper.

**Count XIII – Professional Negligence**
**(Against Cronin)**

114. Pete Vicari re-alleges paragraphs 1, 2, 5-20, and 25 above, and adopts them in this Count by reference.

115. At all times material to this Complaint, Cronin was a licensed, professional corporation doing business in Florida as a professional engineer.

116. Cronin prepared the Drawings for the performance of the Projects and Pete Vicari relied on the Drawings issued by Cronin in performance of its obligations under the prime contract with the Owner.

117. Cronin owed a duty to Pete Vicari to prepare the Drawings and perform its professional engineering services in a professional and competent manner and in

accordance with the standards of care and practice prevailing among similar professionals in the community and in accordance with the rules and regulations governing the profession of engineering in Florida.

118. Cronin breached the duty of care owed to Pete Vicari by providing drawings that failed to contain adequate and appropriate details and requirements for the Projects, including, but not limited to, failing to provide adequate and appropriate details for the fire stopping system, failing to provide adequate and appropriate details for the screws, fasteners and clips used to secure the Sto brand panels to the buildings, failing to provide adequate and appropriate details regarding spacing of the studs, and failing to provide adequate and appropriate design and calculations as to the wind loads for the EIFS system utilized by the Projects.

119. This breach in the duty of care and negligence on the part of Cronin directly and proximately caused damage to Pete Vicari.

WHEREFORE, Pete Vicari requests judgment against Cronin for direct and consequential damages, pre-judgment interest, the costs of this action, and for such other and further relief as this Court deems just and proper.

## Jury Demand

Pete Vicari demands a jury trial on all issues so triable.

Respectfully submitted,

/s/ Michael J. Schofield

MICHAEL J. SCHOFIELD
Florida Bar Number: 373656
mschofield@clarkpartington.com
CLARK PARTINGTON
125 W. Romana St. (32502)
P.O. Box 13010
Pensacola, FL 32591-3010
850-434-9200; 850-432-7340 fax
Counsel for Plaintiff