IN THE UNITED STATES DISTRICT COURT
IN AND FOR THE SOUTHERN DISTRICT OF FLORIDA

PETE VICARI GENERAL CONTRACTOR, LLC, a foreign limited liability company,

Plaintiff,

v.

CASE NO.: 1:17-cv-23733-CMA

THE OHIO CASUALTY INSURANCE COMPANY D/B/A OHIO CASUALTY, a foreign insurance company; COASTAL MAINTENANCE & RESTORATION, INC., a Florida corporation; COASTAL PREFAB, INC., a Florida corporation; and CRONIN ENGINEERING, INC., a Florida corporation,

Defendants.

_______________________________________/

COASTAL MAINTENANCE & RESTORATION, INC., a Florida corporation; and COASTAL PREFAB, INC., a Florida corporation,

Counter– / Cross– / Third-Party Plaintiffs,

v.

PETE VICARI GENERAL CONTRACTOR, LLC, a foreign limited liability company; CIVIC TOWERS, LLLP, a Florida limited liability limited partnership; CIVIC TOWERS SENIOR, LLLP, a Florida limited liability limited partnership; and ALLIED WORLD INSURANCE COMPANY, a foreign insurance company,

Counter– / Cross– / Third-Party Defendants.

_______________________________________/

**COASTAL PARTIES' ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFF'S COMPLAINT, AND INCORPORATED <u>COUNTERCLAIM, CROSSCLAIM AND THIRD-PARTY COMPLAINT</u>**

Defendants, COASTAL MAINTENANCE & RESTORATION, INC. ("**CMR**") and COASTAL PREFAB, INC. ("**CPF**") (collectively, the "**Coastal Parties**"), by and through their

undersigned counsel, hereby Answer and assert their Affirmative Defenses to the Complaint [ECF No. 1] (the "**Complaint**") filed by Plaintiff, PETE VICARI GENERAL CONTRACTOR, LLC ("**PVGC**"), and further assert their Counterclaim, Crossclaim and Third-Party Complaint in response thereto, in this action as follows:

**ANSWER TO COMPLAINT**

"General Allegations"

1. Denied that PVGC is properly licensed to conduct business in the State of Florida. Without knowledge as to the remaining allegations of this paragraph, therefore they are denied.

2. Without knowledge, therefore denied.

3. Admitted.

4. Admitted.

5. Without knowledge, therefore denied.

6. Without knowledge, therefore denied.

7. Without knowledge, therefore denied.

8. Admitted.

9. Without knowledge, therefore denied.

10. Admitted.

11. Admitted that the contract identified as Exhibit 1 to the Complaint speaks for itself, but denied as to any inconsistencies therewith alleged in this paragraph including, without limitation, the date of contract formation.

12. Admitted that the contract identified as Exhibit 2 to the Complaint speaks for itself, but denied as to any inconsistencies therewith alleged in this paragraph including, without limitation, the date of contract formation.

13. The Coastal Parties acknowledge PVGC's use of the terminology identified in paragraph 13 of the Complaint. No further response to this paragraph is required.

14. Admitted that the contract identified as Exhibit 3 to the Complaint speaks for itself, but denied as to any inconsistencies therewith alleged in this paragraph including, without limitation, the date of formation.

15. Admitted that the contract identified as Exhibit 4 to the Complaint speaks for itself, but denied as to any inconsistencies therewith alleged in this paragraph including, without limitation, the date of formation.

16. The Coastal Parties acknowledge PVGC's use of the terminology identified in paragraph 16 of the Complaint. No further response to this paragraph is required.

17. Admitted that the contracts identified as Exhibits 1 through 4 to the Complaint speak for themselves as to the scope of work the Coastal Parties were contracted to perform. Denied as to the remaining allegations of this paragraph.

18. Admitted that the terms of the contracts identified as Exhibits 1 through 4 to the Complaint speak for themselves, with which the Coastal Parties fully complied. Also admitted that the bonds identified as Exhibits 5 through 12 to the Complaint speak for themselves, but denied as to any inconsistencies therewith alleged in this paragraph.

19. Denied.

20. Denied.

21. Denied (including all subparts).

22. Denied (including all subparts).

23. Denied.

24. Without knowledge, therefore denied.

25. Denied.

"Count I – Breach of Performance Bond"
"(Against Surety as to Coastal Maintenance Civic Towers Performance Bond)"

26-34. Count I of the Complaint is not directed to the Coastal Parties, therefore no response to paragraphs 26 through 34 is required. To the extent these paragraphs are deemed to be directed to CMR and/or CPF, they are hereby denied by the Coastal Parties.

"Count II – Breach of Payment Bond"
"(Against Surety as to Coastal Maintenance Civic Towers Payment Bond)"

35-42. Count II of the Complaint is not directed to the Coastal Parties, therefore no response to paragraphs 35 through 42 is required. To the extent these paragraphs are deemed to be directed to CMR and/or CPF, they are hereby denied by the Coastal Parties.

"Count III – Breach of Performance Bond"
"(Against Surety as to Coastal Prefab Civic Towers Performance Bond)"

43-51. Count III of the Complaint is not directed to the Coastal Parties, therefore no response to paragraphs 43 through 51 is required. To the extent these paragraphs are deemed to be directed to CMR and/or CPF, they are hereby denied by the Coastal Parties.

"Count IV – Breach of Payment Bond"
"(Against Surety as to Coastal Prefab Civic Towers Payment Bond)"

52-59. Count IV of the Complaint is not directed to the Coastal Parties, therefore no response to paragraphs 52 through 59 is required. To the extent these paragraphs are deemed to be directed to CMR and/or CPF, they are hereby denied by the Coastal Parties.

"Count V – Breach of Performance Bond"
"(Against Surety as to Coastal Maintenance Civic Towers Senior Performance Bond)"

60-68. Count V of the Complaint is not directed to the Coastal Parties, therefore no response to paragraphs 60 through 68 is required. To the extent these paragraphs are deemed to be directed to CMR and/or CPF, they are hereby denied by the Coastal Parties.

"Count VI – Breach of Payment Bond"
"(Against Surety as to Coastal Maintenance Civic Towers Senior Payment Bond)"

69-76. Count VI of the Complaint is not directed to the Coastal Parties, therefore no response to paragraphs 69 through 76 is required. To the extent these paragraphs are deemed to be directed to CMR and/or CPF, they are hereby denied by the Coastal Parties.

"Count VII – Breach of Performance Bond"
"(Against Surety as to Coastal Prefab Civic Towers Senior Performance Bond)"

77-85. Count VII of the Complaint is not directed to the Coastal Parties, therefore no response to paragraphs 77 through 85 is required. To the extent these paragraphs are deemed to be directed to CMR and/or CPF, they are hereby denied by the Coastal Parties.

"Count VIII – Breach of Payment Bond"
"(Against Surety as to Coastal Prefab Civic Towers Senior Payment Bond)"

86-93. Count VIII of the Complaint is not directed to the Coastal Parties, therefore no response to paragraphs 86 through 93 is required. To the extent these paragraphs are deemed to be directed to CMR and/or CPF, they are hereby denied by the Coastal Parties.

"Count IX – Breach of Contract"
"(Against Coastal Maintenance as to Civic Towers Project)"

94. With regard to paragraph 94, the Coastal Parties repeat and reassert their answers to those paragraphs of the Complaint referred to by number therein as though such answers are fully set forth and restated herein.

95. Denied.

96. Denied.

97. Denied.

98. Without knowledge, therefore denied.

"Count X – Breach of Contract"
"(Against Coastal Maintenance as to Civic Towers Senior Project)"

99. With regard to paragraph 99, the Coastal Parties repeat and reassert their answers to those paragraphs of the Complaint referred to by number therein as though such answers are fully set forth and restated herein.

100. Denied.

101. Denied.

102. Denied.

103. Without knowledge, therefore denied.

"Count XI – Breach of Contract"
"(Against Coastal Prefab as to Civic Towers Project)"

104. With regard to paragraph 104, the Coastal Parties repeat and reassert their answers to those paragraphs of the Complaint referred to by number therein as though such answers are fully set forth and restated herein.

105. Denied.

106. Denied.

107. Denied.

108. Without knowledge, therefore denied.

"Count XII – Breach of Contract"
"(Against Coastal Prefab as to Civic Towers Senior Project)"

109. With regard to paragraph 109, the Coastal Parties repeat and reassert their answers to those paragraphs of the Complaint referred to by number therein as though such answers are fully set forth and restated herein.

110. Denied.

111. Denied.

112. Denied.

113. Without knowledge, therefore denied.

"Count XIII – Professional Negligence"
"(Against Cronin)"

114-119. Count XIII of the Complaint is not directed to the Coastal Parties, therefore no response to paragraphs 114 through 119 is required. To the extent these paragraphs are deemed to be directed to CMR and/or CPF, they are hereby denied by the Coastal Parties.

120. The Coastal Parties deny all other allegations of the Complaint not expressly admitted herein.

## AFFIRMATIVE DEFENSES TO COMPLAINT

The Coastal Parties state their Affirmative Defenses to the Complaint as follows, and by doing so the Coastal Parties do not adopt the burden of proof when such burden properly rests with PVGC under applicable law:

### *Statement of Facts*

121. As grounds for these Affirmative Defenses, the Coastal Parties repeat, reallege and incorporate by reference the "General Factual Allegations" set forth in paragraphs 1 through 99 of their Counterclaim, Crossclaim and Third-Party Complaint asserted herein.

### FIRST AFFIRMATIVE DEFENSE

122. The subject contracts are void *ab initio* as PVGC was not properly licensed as a general contractor in the State of Florida and therefore could not enter into any contracts for the construction projects at issue.

### SECOND AFFIRMATIVE DEFENSE

123. PVGC cannot recover on its claims against the Coastal Parties because PVGC was the party who committed the material breach of the contracts at issue.

### THIRD AFFIRMATIVE DEFENSE

124. The Coastal Parties were excused from performing the terms of their respective contracts due to PVGC's failure to perform its duties thereunder.

### FOURTH AFFIRMATIVE DEFENSE

125. The Coastal Parties' obligations to perform under their respective contracts are excused under the doctrine of commercial frustration as the purpose of the contracts has been frustrated by PVGC's actions.

### FIFTH AFFIRMATIVE DEFENSE

126. PVGC violated the implied covenant of good faith and fair dealing for each of the subject contracts by frustrating the purpose of the contracts through its actions.

### SIXTH AFFIRMATIVE DEFENSE

127. It was impossible for the Coastal Parties to perform their duties under their respective contracts as a result of PVGC's actions.

### SEVENTH AFFIRMATIVE DEFENSE

128. The Coastal Parties have no obligations to perform under the terms of their respective contracts as PVGC repudiated the agreements.

### EIGHTH AFFIRMATIVE DEFENSE

129. PVGC's claims against the Coastal Parties are barred due to the anticipatory breach by PVGC of the contracts at issue.

### NINTH AFFIRMATIVE DEFENSE

130. By this lawsuit PVGC is attempting to benefit from its own wrongdoing; PVGC's claims are therefore barred by the doctrine of unclean hands.

## TENTH AFFIRMATIVE DEFENSE

131. PVGC's claims are barred to the extent that it has failed to mitigate its damages and/or has exacerbated them.

## ELEVENTH AFFIRMATIVE DEFENSE

132. To the extent PVGC's claims for damages stem from the Coastal Parties alleged failure to make payment to any subcontractor or sub-subcontractor, PVGC's claims are barred as it failed to timely issue payments to the Coastal Parties for the labor, services and materials provided.

## RESERVATION OF RIGHTS

133. The Coastal Parties presently have insufficient knowledge or information on which to form a belief as to whether they may have additional, as yet unstated, affirmative defenses available to them in this action. The Coastal Parties expressly reserve herein the right to assert additional affirmative defenses in the event the receipt of further discovery and/or other information indicates such defenses would be appropriate.

## ENTITLEMENT TO ATTORNEYS' FEES AND COSTS

134. The Coastal Parties have been caused to retain their undersigned counsel, Parrish, White & Yarnell, P.A. ("**PWY**"), to represent them in this action, and they are required to pay reasonable attorneys' fees and costs for PWY's services rendered herein. As the prevailing parties in this action, the Coastal Parties are entitled to recover their attorneys' fees and costs incurred in this case from PVGC.

## DEMAND FOR JURY TRIAL

135. The Coastal Parties hereby request a jury trial of all issues so triable.

WHEREFORE, and by reason of the foregoing, the Coastal Parties demand judgment against PVGC dismissing all claims asserted against CMR and CPF in the Complaint with prejudice, awarding the Coastal Parties the recovery of their attorneys' fees and costs incurred in this case from PVGC, and granting such other and further relief in the Coastal Parties' favor as the Court deems just and proper in this action.

## COUNTERCLAIM, CROSSCLAIM AND THIRD-PARTY COMPLAINT

Counter– / Cross– / Third-Party Plaintiffs, COASTAL MAINTENANCE & RESTORATION, INC. ("**CMR**") and COASTAL PREFAB, INC. ("**CPF**") (collectively, the "**Coastal Parties**"), by and through their undersigned counsel, hereby sue Counter– / Cross– / Third-Party Defendants, PETE VICARI GENERAL CONTRACTOR, LLC ("**PVGC**"), CIVIC TOWERS, LLLP ("**Civic**"), CIVIC TOWERS SENIOR, LLLP ("**Civic Senior**" and together with Civic, the "**Owners**"), and ALLIED WORLD INSURANCE COMPANY ("**Allied**"), and state as follows:

### GENERAL FACTUAL ALLEGATIONS

1. This is an action asserting counterclaims, crossclaims and third-party claims for damages in excess of $75,000 and other relief.

2. CMR is a Florida corporation with its principal place of business located in Naples, Collier County, Florida.

3. CPF is a Florida corporation with its principal place of business located in Naples, Collier County, Florida.

4. PVGC is a foreign limited liability company organized in the State of Louisiana, with its principal place of business located in Harvey, Louisiana. Upon information and belief,

Peter G. Vicari (**"Vicari Sr."**), Peter J. Vicari (**"Vicari Jr."**) and Barbara T. Vicari (individually and collectively, the **"Vicaris"**), are all residents of Louisiana and the members and/or managers of PVGC.

5. Civic is a Florida limited liability limited partnership with its principal place of business located in Miami, Miami-Dade County, Florida. Upon information and belief, the general partner of Civic is Civic Towers Management, LLC, a foreign limited liability company organized in the State of Delaware, with its principal place of business located in Burlingame, California.

6. Civic Senior is a Florida limited liability limited partnership with its principal place of business located in Miami, Miami-Dade County, Florida. Upon information and belief, the general partner of Civic Senior is AHA Southeast, LLC, a foreign limited liability company organized in the State of Delaware, with its principal place of business located in Newport Beach, California.

7. Allied is a foreign insurance company incorporated in the State of New Hampshire, with its principal place of business located in New York, New York.

8. This Court has original and/or supplemental jurisdiction in this action pursuant to 28 U.S.C. §§ 1332, 1367.

***The Prime Contracts and Bonds***

9. On or about February 8, 2017, PVGC entered into a construction contract with Civic for the improvement of real property. A copy of the Civic/PVGC Contract is attached as **EXHIBIT A** and is incorporated herein by reference.

10. In connection therewith, PVGC, as principal, and Allied, as surety, executed and delivered a payment bond for said improvements to Civic, the owner of the property. A copy of the Civic Payment Bond is attached as **EXHIBIT B** and is incorporated herein by reference.

11. Also, on or about February 8, 2017, PVGC entered into a construction contract with Civic Senior for the improvement of real property. A copy of the Civic Senior/PVGC Contract is attached as **EXHIBIT C** and is incorporated herein by reference.

12. In connection therewith, PVGC, as principal, and Allied, as surety, executed and delivered a payment bond for said improvements to Civic Senior, the owner of the property. A copy of the Civic Senior Payment Bond is attached as **EXHIBIT D** and is incorporated herein by reference.

13. The Civic and Civic Senior construction contracts with PVGC attached hereto as EXHIBITS A & C are collectively referred to herein as the "**Prime Contracts**," and the Civic and Civic Senior Payment Bonds attached hereto as EXHIBITS B & D are collectively referred to herein as the "**Bonds**."

***The Subcontracts***

14. On or about February 16, 2017, CMR entered into a Subcontract Agreement with PVGC for the improvement of Civic's real property, a mid-rise residential apartment building known as the Civic Towers. The Subcontract Agreement provided for the demolition of the entire existing exterior wall panel system and the installation of all new exterior wall panels. A copy of the Civic Towers Subcontract Agreement is attached as **EXHIBIT E** and is incorporated herein by reference.

15. On or about February 16, 2017, CMR also entered into a Subcontract Agreement with PVGC for the improvement of Civic Senior's real property, a mid-rise residential

apartment building known as the Civic Towers Senior. The Subcontract Agreement provided for the demolition of the entire existing exterior wall panel system and the installation of all new exterior wall panels. A copy of the Civic Towers Senior Subcontract Agreement is attached as **EXHIBIT F** and is incorporated herein by reference.

16. On or about February 16, 2017, CPF entered into a materials Purchase Agreement with PVGC for provision of pre-manufactured wall panels for the improvement of the Civic Towers property. A copy of the Civic Towers Purchase Agreement is attached as **EXHIBIT G** and is incorporated herein by reference.

17. On or about February 16, 2017, CPF also entered into a materials Purchase Agreement with PVGC for provision of pre-manufactured wall panels for the improvement of the Civic Towers Senior property. A copy of the Civic Towers Senior Purchase Agreement is attached as **EXHIBIT H** and incorporated herein by reference.

18. The CMR and CPF contracts with PVGC attached hereto as EXHIBITS E, F, G & H are collectively referred to herein as the "**Subcontracts.**"

***Fraudulent Licensure***

19. At the time that CMR and CPF entered into the above-referenced Subcontracts with PVGC, they were unaware that PVGC was not a properly licensed general contractor in the State of Florida, and that PVGC had obtained its license by fraudulently misrepresenting the work experience of Vicari Jr., its license holder.

20. Preparation to perform the Civic Towers and Civic Towers Senior projects began in the summer of 2016 as the Coastal Parties started to work with PVGC toward beginning construction in January of 2017.

21. However, unbeknownst to the Coastal Parties, PVGC was not validly licensed or qualified to act as a general contractor in Florida at the time or any time. Indeed, PVGC first fraudulently obtained a license on or about October 14, 2016 through Vicari Jr., its only purported qualifier in Florida.

22. Prior to and during the negotiations leading to the Prime Contracts for the construction projects at issue in this action, PVGC had no Florida general contractor's license and was not qualified or permitted to legally act as a general contractor in Florida.

23. Upon information and belief, PVGC sought to and eventually fraudulently obtained a Florida license for the purpose of acquiring the substantial Prime Contracts for general contracting services from Civic and Civic Senior, worth over $32,000,000 combined.

24. For unknown reasons, Civic and Civic Senior preferred to engage PVGC, a Louisiana general contractor, to perform work in Miami, Florida on two complicated high-rise buildings, rather than seek a qualified Florida contractor with appropriate experience that already had the necessary license to do the work.

25. When they entered into contract negotiations with PVGC, and at all times thereafter, Civic and Civic Senior had knowledge of or easy access to information showing that PVGC did not have a Florida license or qualifier, yet they chose to engage PVGC anyway.

26. PVGC also knew at the time that no one at the company had the requisite experience in general contracting to legally obtain a valid Florida license to perform the work it was contracting for and that the company could not legally perform the work under any circumstances.

27. Nevertheless, presumably motivated by the sizable Prime Contracts at stake, PVGC and Vicari Jr. decided to obtain a license by falsifying Vicari Jr.'s experience in general

contracting, making it seem as though Vicari Jr. and PVGC had the required skill and experience to perform the job when, in fact, they did not.

28. In furtherance of this fraudulent scheme, on or about August 23, 2016, Vicari Jr. submitted a false application to the Florida Department of Professional Regulation (“**DBPR**”) wrongly claiming, among other things, that he had experience in constructing buildings of 4 or more stories when, in fact, he had no such experience.

29. Specifically, and under penalty of perjury, Vicari Jr. falsely represented on his original application to the DBPR that he had provided services as a foreman on five different projects which he swore under oath were each 4 or more stories.

30. Vicari Jr. lied about each and every one of the five projects that he listed, as none of them were buildings with 4 stories or more. Moreover, many of the listed projects did not actually qualify, as they did not involve structural construction, which was also required.

31. In addition, it is believed that Vicari Jr. also lied about his actual involvement on the projects and other matters in his DBPR application insofar as he did not have the skill or experience to manage a complicated structural project like the ones at issue.

32. Unfortunately, apparently at that time Florida’s DBPR did not have a procedure in place to confirm or verify the accuracy (or falsity) of Vicari Jr.’s application statements.

33. Notwithstanding his attempted deception, on September 22, 2016, the DBPR still rejected Vicari Jr.’s original application to become a licensed Florida general contractor anyway, citing that Vicari Jr. had not demonstrated enough experience to be permitted to perform general contracting services in Florida, even with all the falsehoods and fabricated professional history.

34. At the time, the DBPR was not aware that Vicari Jr.'s original application had been falsified.

35. Undeterred by this rejection, Vicari Jr. elaborated on his erroneous application, presenting more false experience and misrepresenting, among other things, that a steel building (which he previously stated was 70-feet high) had 6 stories when it actually had only 1, and renaming a project (which he previously stated was a 2-story building) to falsely claim that it had 4 stories, all in a disingenuous effort to satisfy the DBPR's requirements.

36. The DBPR again accepted Vicari Jr.'s additional representations as true without actually checking the projects he listed, and upon these false and fraudulent sworn statements, the DBPR granted him a license to perform general contracting services in Florida.

37. Vicari Jr.'s license was obtained fraudulently and under false pretenses and is void *ab initio* as a matter of law.

38. As such, PVGC has at all times been operated illegally in the state of Florida as an unlicensed general contractor, unskilled and incompetent to perform the work on the projects at issue.

39. Since PVGC was effectively unlicensed in the state of Florida when it entered into the contracts at issue, its contracts are void and unenforceable and it has no contractual defenses to this action.

40. In addition, as it stands in the shoes of PVGC and has issued the subject Bonds to an unlicensed contractor, Allied has no contractual defenses to this action either.

***Performance of the Subcontracts***

41. After entering into the Subcontracts, and unaware that PVGC was operating illegally as an unlicensed contractor, CMR and CPF began to perform their work on the projects.

42. However, PVGC's lack of skill and experience in properly coordinating sophisticated and complex construction of this kind soon became apparent, as it was not prepared to begin the work or to prosecute it in an efficient manner.

43. PVGC did not timely engage subcontractors, did not properly bid out the work before starting the job, did not timely evacuate the residents of the buildings, did not prepare an evacuation plan for the buildings despite having residents inside while construction was taking place, did not provide sufficient access to the buildings, did not prepare the underlying work, failed to disengage power during demolition, did not timely obtain necessary permits, and did not timely provide equipment or electricity for the progress of the work or the equipment needed. Indeed, it did not even have sufficient sanitation onsite for the workers at the properties.

44. PVGC did not have sufficient staff to perform as a general contractor and had to engage independent contractors to perform project management and supervision services. Nor did PVGC timely engage those personnel such that they could become familiar with the scope of the job well before it started.

45. PVGC also consistently failed to properly coordinate the trades. In fact, the lack of coordination was so bad that there were frequent failures to deactivate live wires for safety during demolition.

46. Moreover, PVGC would routinely commandeer CMR's equipment because it had not timely or properly provided its own equipment for the job, often moving the equipment for its own use without consulting CMR and slowing CMR's progress.

47. PVGC also initially failed to conduct organized production meetings and, after it was directed to do so by the Owners, it would still do them with no regular agenda, circulated notes or proper schedule updates.

48. CMR and CPF did their best to progress their work despite the incompetence and inexperience of PVGC, yet other problems regularly surfaced.

49. For example, the windows specified for the projects failed mandatory water tests over nine different times, holding up production of the wall panels at CPF's factory. Indeed, this problem became so critical that CPF was directed to cease production until the Owners could negotiate a resolution with the window manufacturer.

50. PVGC directed the Coastal Parties to submit a change order to recover the expenses and costs of this production hold. Later, it refused to pay what it had previously agreed to pay for this delay.

51. Throughout the course of the job, PVGC failed to maintain a schedule or issue regular schedule updates.

52. PVGC's performance as a general contractor, coupled with the window problems, was so bad that its failure to prepare and coordinate the work began to severely delay the projects.

53. In the first months of 2017, it was discovered that PVGC and the Owners had not obtained proper shop drawings and permit approvals.

54. Inexperienced and unqualified, PVGC had not even allowed time for this in its schedule for the projects, so further delay ensued.

55. Unbeknownst to the Coastal Parties, PVGC had also engaged private providers to do approvals and inspections of the work on the projects instead of the City of Miami's local building department authorities. While this is a permitted practice, it later became apparent

that this was done in a concerted effort to keep the City from discovering that PVGC and the Owners had misrepresented and under-valued the scope of the work that was being performed on the projects.

56. In a continuing pattern of deception, in addition to falsifying its licensure application, PVGC also falsified its permit application to the City of Miami, misrepresenting that the total value of the improvements to be made to the Civic Towers and Civic Towers Senior properties were $9,658,429 when, in reality, they were in excess of $32,000,000.

57. Upon information and belief, PVGC and the Owners, Civic and Civic Senior, misrepresented the value of improvements on the permit application for these projects for at least two reasons:

(a) First, they wrongfully sought to avoid paying hundreds of thousands of dollars to the City of Miami for rightfully payable permitting fees that were based upon the cost of the improvements; and

(b) Second, they improperly sought to avoid FEMA regulations and the "50% Rule," which would have required them to spend many more hundreds of thousands of dollars to bring the existing unsafe structures up to current building codes.

58. Had PVGC and the Owners accurately reported the true extent of the work being done to FEMA and the City, substantial additional and costly work would have been required by federal law to ensure the safety of the residents of the existing buildings.

59. Instead, PVGC and the Owners chose to deceive both FEMA and the City of Miami authorities.

60. As the projects began to progress, PVGC's mismanagement of the process became pervasive, which it sought to cover by blaming others for its own mistakes and improprieties.

61. Among other things, with respect to CMR and CPF, PVGC mismanaged the draw process beginning with the first draw, where they failed to pay $200,000, claiming that they had "forgotten" to include it in the draw. Prior to that time, PVGC had also failed to timely pay for engineering fees as agreed.

62. CMR's job included hoisting and installing the wall panels and properly securing them. From March of 2017 forward, there were several periods of unusually heavy wind and weather conditions during which it was not safe for CMR to install the panels. CMR properly requested time extensions for these delays.

63. In addition, as old exterior wall panels were being removed from the structures, it was discovered that the embedded steel plates that had been used to secure them could not be re-used due to deterioration, and that all new plates (called embeds) had to be engineered and fabricated.

64. This represented a substantial change to CMR's scope of work on the projects that was not included in the initial Subcontracts and substantially increased the time and costs to complete the job.

65. Despite the fact that this was not included in CMR's initial scope of work, PVGC authorized CMR to obtain and install the embeds, but later refused to recognize this change, pay for it, or account for it in the schedule.

66. In fact, it was PVGC's practice to consistently refuse to acknowledge and honor properly requested change orders and time extensions. Instead, it would attempt to pressure CMR

to perform out of scope work at no charge, and to install the wall panels in unsafe conditions, because of its prior schedule delays. This resulted in damage to the panels and endangered the safety of CMR's onsite crews.

67. The Subcontracts should be modified by the Change Orders and Time Extensions collectively attached as **EXHIBIT I** and incorporated herein by reference, as the Coastal Parties are entitled to have said Change Orders and Time Extensions approved.

68. Indeed, Vicari Sr. repeatedly urged unsafe practices and unreasonable actions, intimidating and interfering with CMR's onsite personnel. Vicari Sr. stated that he believed in management by intimidation and threat, and that people in the construction trade should expect this kind of aggressive unprofessionalism. Vicari Sr. consistently maintained a hostile working environment on the projects.

69. Vicari Sr. himself would regularly fail to adhere to standard safety protocols, causing delays in the progress of the work on the projects by, among other things, walking under cranes without a hard-hat while the cranes were elevating live loads.

70. When asked to adhere to normal safety standards on the jobsite, Vicari Sr. insisted that those who had reported the violations be removed from the projects, throwing things at them in the process.

71. As it became apparent that PVGC's incompetence and mismanagement, the window issues, the unforeseen conditions and weather would cause the projects to be extended beyond 2017, Vicari Sr. and PVGC began to pressure the Coastal Parties even more, continuing to refuse to execute or timely process valid extensions and other change orders submitted by the Coastal Parties.

72. In May of 2017, PVGC and the Vicaris began an unfounded effort to try to pressure CMR and CPF to accelerate their work on the projects, falsely accusing them of being behind schedule and threatening to make claims against their payment and/or performance bonds issued on the Subcontracts.

73. As relations began to sour, it became apparent that PVGC and the Vicaris sought to use the Coastal Parties as a scapegoat for their failure to properly organize, oversee and orchestrate the projects.

74. In and around the latter part of May and beginning of June of 2017, numerous failures on the part of PVGC to coordinate and manage the work began to surface.

75. For example, PVGC completely failed to coordinate the work to provide for fire-stopping between the floors of the buildings. When PVGC discovered, during the progress of the job, that it had not provided for or obtained a bid for this work, it attempted to force CMR to perform this function even though CMR had expressly excluded this from its Subcontracts and had so advised PVGC nearly a year before.

76. Undeterred, PVGC threatened to back-charge the Coastal Parties over $200,000 in an effort to intimidate them to perform this additional work for free.

77. PVGC also discovered during this time that it had not properly coordinated the work in regard to the parapet walls on the roof of the buildings, as it had not provided for parapet wall sheathing at the backside of the exterior wall panels.

78. Despite the fact that no sheathing was specified for the panels as produced, PVGC ordered that the Coastal Parties install this at their cost, refusing to approve a change order for the work.

79. At this same time, PVGC also advised CMR that it would not allow time extensions to perform necessary slab edge repairs and that the schedule would not be adjusted for this work.

80. These repairs were necessary and expected due to the nature of conditions on the projects, but PVGC had not accounted for them in the schedule.

81. Although the repairs were not a part of CMR's scope of work, CMR initially agreed to perform some of this work under change orders. However, after the work was performed, PVGC refused to approve the time extensions required by the work, and so CMR declined to do any more of these change orders.

82. PVGC then failed to make any further efforts to perform the repairs, again further delaying the projects.

83. In June of 2017, the Coastal Parties expended substantial overtime to accelerate their schedule despite having no obligation or responsibility to do so.

84. However, the weather delays continued and, despite openly acknowledging the fact that CMR was on schedule, PVGC insisted that CMR and CPF provide accelerated schedules to complete the projects earlier.

85. The Coastal Parties complied, providing detailed acceleration plans, but PVGC immediately rejected them because they included additional costs. PVGC refused to pay any costs associated with the schedule acceleration.

86. Instead, PVGC attempted to extort the Coastal Parties to expend more of their own funds to accelerate the schedule without compensation, advising CMR and CPF that if they agreed to accelerate for no cost, PVGC would drop its false claims with regard to the fire-stopping work and other charges it had fabricated.

87. PVGC even sent its project manager, Robert Mick, all the way to the Coastal Parties' offices in Naples, Florida, to tell them that it would be better for them to finish the job early and avoid further intimidation.

88. On June 13, 2017, the Coastal Parties submitted their proposal for accelerating the schedule of the projects as requested, without reference to Vicari Sr. and PVGC's attempts to leverage concessions with false and unsubstantiated claims.

89. Vicari Sr. for PVGC immediately rejected the proposal as too costly without any real substantive consideration or review, and told the Coastal Parties to rework the acceleration plan again.

90. At the time of the rejection, the Coastal Parties' May 2017 draw request had already been processed and approved by PVGC and the architect for the projects.

91. On June 16, 2017, in a brazen and extortionate attempt to strong-arm the Coastal Parties to accelerate for no cost, PVGC unilaterally reduced the previously approved May 2017 draw request from $575,000 to zero, refusing to pay the full amount due.

92. The Coastal Parties immediately objected and demanded assurances that the May 2017 draw would be paid in accordance with its prior approval.

93. PVGC refused and stated that it would not reinstate the May 2017 draw unless the Coastal Parties complied with its demands.

94. The Coastal Parties warned PVGC that they would not and could not continue to perform under the Subcontracts without getting paid for their work, but that they also would not agree to Vicari Sr. and PVGC's extortionate demands.

95. On June 19, 2017, CMR and CPF issued stop work notices and advised PVGC that they would stop work and terminate the Subcontracts if PVGC did not agree to pay at least some part of the outstanding May 2017 draw.

96. Nevertheless, PVGC still refused to tender the May 2017 draw payment due.

97. On June 26, 2017, the Coastal Parties terminated the Subcontracts. Copies of the Notices of Work Stoppage and Notices of Termination are collectively attached as **EXHIBIT J** and incorporated herein by reference.

98. CMR is owed $339,083.04 under EXHIBIT E for the Civic Towers project and $276,634.70 under EXHIBIT F for the Civic Towers Senior project, in addition to lost profits and other damages.

99. CPF is owed $376,038.50 under EXHIBIT G for the Civic Towers project and $304,656.38 under EXHIBIT H for the Civic Towers Senior project, in addition to lost profits and other damages.

## COUNT I
## CLAIM AGAINST CIVIC PAYMENT BOND #S001-4923
### *CMR v. Allied*

100. CMR repeats the allegations contained in paragraphs 1 through 99 above.

101. As afore-stated, PVGC entered into the construction contract with Civic for the improvement of the real property known as the Civic Towers, a copy of which is attached as EXHIBIT A.

102. In connection therewith, PVGC, as principal, and Allied, as surety, executed and delivered the Civic Payment Bond #S001-4923 to Civic, a copy of which is attached as EXHIBIT B.

103. On or about February 16, 2017, CMR entered into the Civic Towers Subcontract Agreement with PVGC for a portion of PVGC's work under said construction contract, a copy of which is attached as EXHIBIT E.

104. PVGC breached the Civic Towers Subcontract Agreement (EXHIBIT E) as afore-stated by failing to make timely payment to CMR and by the other breaches identified above.

105. PVGC's actions constitute material breaches and defaults under the Civic Towers Subcontract Agreement (EXHIBIT E) for which Allied is liable under the Civic Payment Bond (EXHIBIT B).

106. CMR has been damaged by such breaches and defaults in the amount of $339,083.04, which was due on June 19, 2017.

107. CMR has performed all duties entitling it to payment, and all conditions precedent to payment and statutory requisites have been performed or have occurred.

108. The last date that CMR furnished materials or labor under the Civic Towers Subcontract Agreement (EXHIBIT E) was June 19, 2017.

109. CMR served Civic, PVGC and Allied with a Notice of Performance and Nonpayment on or about June 23, 2017, a copy of which is attached as **EXHIBIT K** and incorporated herein by reference.

110. CMR has been caused to retain counsel to maintain this action and has been obligated to pay reasonable attorneys' fees.

111. CMR is entitled to attorneys' fees in accordance with Fla. Stat. § 713.29.

*Wherefore* CMR demands judgment for damages against Allied, plus attorneys' fees, interest and costs.

**COUNT II**
**CLAIM AGAINST CIVIC SENIOR PAYMENT BOND #S001-4924**
***CMR v. Allied***

112. CMR repeats the allegations contained in paragraphs 1 through 99 above.

113. As afore-stated, PVGC entered into the construction contract with Civic Senior for the improvement of the real property known as the Civic Senior Towers, a copy of which is attached as EXHIBIT C.

114. In connection therewith, PVGC, as principal, and Allied, as surety, executed and delivered the Civic Senior Payment Bond #S001-4924 to Civic Senior, a copy of which is attached as EXHIBIT D.

115. On or about February 16, 2017, CMR entered into the Civic Towers Senior Subcontract Agreement with PVGC for a portion of PVGC's work under said construction contract, a copy of which is attached as EXHIBIT F.

116. PVGC breached the Civic Towers Senior Subcontract Agreement (EXHIBIT F) as afore-stated by failing to make timely payment to CMR and by the other breaches identified above.

117. PVGC's actions constitute material breaches and defaults under the Civic Towers Senior Subcontract Agreement (EXHIBIT F) for which Allied is liable under the Civic Senior Payment Bond (EXHIBIT D).

118. CMR has been damaged by such breaches and defaults in the amount of $276,634.70, which was due on June 19, 2017.

119. CMR has performed all duties entitling it to payment, and all conditions precedent to payment and statutory requisites have been performed or have occurred.

120. The last date that CMR furnished materials or labor under the Civic Senior Subcontract Agreement (EXHIBIT F) was June 19, 2017.

121. CMR served Civic Senior, PVGC and Allied with a Notice of Performance and Nonpayment on or about June 23, 2017, a copy of which is attached as **EXHIBIT L** and incorporated herein by reference.

122. CMR has been caused to retain counsel to maintain this action and has been obligated to pay reasonable attorneys' fees.

123. CMR is entitled to attorneys' fees in accordance with Fla. Stat. § 713.29.

*Wherefore* CMR demands judgment for damages against Allied, plus attorneys' fees, interest and costs.

**COUNT III**
**CLAIM AGAINST CIVIC PAYMENT BOND #S001-4923**
***CPF v. Allied***

124. CPF repeats the allegations contained in paragraphs 1 through 99 above.

125. As afore-stated, PVGC entered into the construction contract with Civic for the improvement of the real property known as the Civic Towers, a copy of which is attached as EXHIBIT A.

126. In connection therewith, PVGC, as principal, and Allied, as surety, executed and delivered the Civic Payment Bond #S001-4923 to Civic, a copy of which is attached as EXHIBIT B.

127. On or about February 16, 2017, CPF entered into the Civic Towers Purchase Agreement with PVGC for a portion of PVGC's work under said construction contract, a copy of which is attached as EXHIBIT G.

128. PVGC breached the Civic Towers Purchase Agreement (EXHIBIT G) as afore-stated by failing to make timely payment to CPF and by the other breaches identified above.

129. PVGC's actions constitute material breaches and defaults under the Civic Towers Purchase Agreement (EXHIBIT G) for which Allied is liable under the Civic Payment Bond (EXHIBIT B).

130. CPF has been damaged by such breaches and defaults in the amount of $376,038.50, which was due on June 19, 2017.

131. CPF has performed all duties entitling it to payment, and all conditions precedent to payment and statutory requisites have been performed or have occurred.

132. The last date that CPF furnished materials or labor under the Civic Towers Purchase Agreement (EXHIBIT G) was June 19, 2017.

133. CPF served Civic, PVGC and Allied with a Notice of Performance and Nonpayment on or about June 23, 2017, a copy of which is attached as **EXHIBIT M** and incorporated herein by reference.

134. CPF has been caused to retain counsel to maintain this action and has been obligated to pay reasonable attorneys' fees.

135. CPF is entitled to attorneys' fees in accordance with Fla. Stat. § 713.29.

*Wherefore* CPF demands judgment for damages against Allied, plus attorneys' fees, interest and costs.

**COUNT IV**
**CLAIM AGAINST CIVIC SENIOR PAYMENT BOND #S001-4924**
***CPF v. Allied***

136. CPF repeats the allegations contained in paragraphs 1 through 99 above.

137. As afore-stated, PVGC entered into the construction contract with Civic Senior for the improvement of the real property known as the Civic Senior Towers, a copy of which is attached as EXHIBIT C.

138. In connection therewith, PVGC, as principal, and Allied, as surety, executed and delivered the Civic Senior Payment Bond #S001-4924 to Civic Senior, a copy of which is attached as EXHIBIT D.

139. On or about February 16, 2017, CPF entered into the Civic Towers Senior Purchase Agreement with PVGC for a portion of PVGC's work under said construction contract, a copy of which is attached as EXHIBIT H.

140. PVGC breached the Civic Towers Senior Purchase Agreement (EXHIBIT H) as afore-stated by failing to make timely payment to CPF and by the other breaches identified above.

141. PVGC's actions constitute material breaches and defaults under the Civic Towers Senior Purchase Agreement (EXHIBIT H) for which Allied is liable under the Civic Senior Payment Bond (EXHIBIT D).

142. CPF has been damaged by such breaches and defaults in the amount of $304,656.38, which was due on June 19, 2017.

143. CPF has performed all duties entitling it to payment, and all conditions precedent to payment and statutory requisites have been performed or have occurred.

144. The last date that CPF furnished materials or labor under the Civic Towers Senior Purchase Agreement (EXHIBIT H) was June 19, 2017.

145. CPF served Civic Senior, PVGC and Allied with a Notice of Performance and Nonpayment on or about June 23, 2017, a copy of which is attached as **EXHIBIT N** and incorporated herein by reference.

146. CPF has been caused to retain counsel to maintain this action and has been obligated to pay reasonable attorneys' fees.

147. CPF is entitled to attorneys' fees in accordance with Fla. Stat. § 713.29.

*Wherefore* CPF demands judgment for damages against Allied, plus attorneys' fees, interest and costs.

**COUNT V**
**<u>CONSTRUCTION LIEN FORECLOSURE</u>**
***CMR v. Civic***
***(pled in the alternative to Count I)***

148. CMR repeats the allegations contained in paragraphs 1 through 99 above.

149. This is an action to enforce a construction lien pursuant to Fla. Stat. chs. 713 and 85.

150. At all times material hereto, Civic was and is the owner of that certain real property commonly known as the Civic Towers, located at 1855 N.W. 15th Street, Miami, Miami-Dade County, Florida, and legally described as follows:

> **Tract B of ST. AUGUSTIN SUBDIVISION, according to the plat thereof, as recorded in Plat Book 129, Page 88, of the Public Records of Miami-Dade County, Florida.**

151. Civic recorded its Notice of Commencement for improvements to said property, a copy of which is attached as **<u>EXHIBIT O</u>** and incorporated herein by reference.

152. CMR first commenced performance of its duties under the Civic Towers Subcontract Agreement attached as <u>EXHIBIT E</u> on January 26, 2017.

153. On or about February 27, 2017, CMR served Civic with a Notice to Owner, a copy of which is attached as **<u>EXHIBIT P</u>** and incorporated herein by reference. CMR further served PVGC with a true and correct copy of said Notice on or about that same date.

154. All conditions precedent to payment have occurred or have been performed.

155. CMR remains unpaid $339,083.04 under the Civic Towers Subcontract Agreement attached as <u>EXHIBIT E</u>. Civic and PVGC have breached their duties in failing to make payment to CMR, which payment was due on June 19, 2017.

156. CMR has been caused to record a Claim of Lien on the subject property on June 26, 2017, at O.R. Book 30587, Pages 2265-2266, in the Public Records of Miami-Dade County, Florida, a copy of which is attached as **EXHIBIT Q** and incorporated herein by reference.

157. CMR served a true and correct copy of said Claim of Lien on Civic on or about June 26, 2017, a copy of the return receipt for which is attached as **EXHIBIT R** and incorporated herein by reference.

158. CMR has been caused to retain counsel to maintain this action and has been obligated to pay reasonable attorneys' fees.

159. CMR is entitled to attorneys' fees in accordance with Fla. Stat. § 713.29.

*Wherefore* CMR prays that this court will:

A. Recognize CMR's Claim of Lien in the amount found to be due, plus pre- and post-judgment interest, costs and attorneys' fees;

B. Render a money judgment in CMR's favor for damages in that amount;

C. Order the subject property be sold in accordance with the law and practice of this Court to pay said amount due to CMR in full; and

D. Grant such other and further relief in CMR's favor as this Court deems just and proper in this action.

**COUNT VI**
**CONSTRUCTION LIEN FORECLOSURE**
***CMR v. Civic Senior***
***(pled in the alternative to Count II)***

160. CMR repeats the allegations contained in paragraphs 1 through 99 above.

161. This is an action to enforce a construction lien pursuant to Fla. Stat. chs. 713 and 85.

162. At all times material hereto, Civic Senior was and is the owner of that certain real property commonly known as the Civic Towers Senior, located at 1400 N.W. 19th Street, Miami, Miami-Dade County, Florida, and legally described as follows:

> **Tract A of T.M. ALEXANDER SUBDIVISION, according to the plat thereof, as recorded in Plat Book 123, Page 63, of the Public Records of Miami-Dade County, Florida.**

163. Civic Senior recorded its Notice of Commencement for improvements to said property, a copy of which is attached as **EXHIBIT S** and incorporated herein by reference.

164. CMR first commenced performance of its duties under the Civic Towers Senior Subcontract Agreement attached as EXHIBIT F on January 26, 2017.

165. On or about February 27, 2017, CMR served Civic Senior with a Notice to Owner, a copy of which is attached as **EXHIBIT T** and incorporated herein by reference. CMR further served PVGC with a true and correct copy of said Notice on or about that same date.

166. All conditions precedent to payment have occurred or have been performed.

167. CMR remains unpaid $276,634.70 under the Civic Towers Senior Subcontract Agreement attached as EXHIBIT F. Civic Senior and PVGC have breached their duties in failing to make payment to CMR, which payment was due on June 19, 2017.

168. CMR has been caused to record a Claim of Lien on the subject property on June 26, 2017, at O.R. Book 30587, Pages 2267-2268, in the Public Records of Miami-Dade County, Florida, a copy of which is attached as **EXHIBIT U** and incorporated herein by reference.

169. CMR served a true and correct copy of said Claim of Lien on Civic Senior on or about June 26, 2017, a copy of the return receipt for which is attached as **EXHIBIT V** and incorporated herein by reference.

170. CMR has been caused to retain counsel to maintain this action and has been obligated to pay reasonable attorneys' fees.

171. CMR is entitled to attorneys' fees in accordance with Fla. Stat. § 713.29.

*Wherefore* CMR prays that this court will:

A. Recognize CMR's Claim of Lien in the amount found to be due, plus pre- and post-judgment interest, costs and attorneys' fees;

B. Render a money judgment in CMR's favor for damages in that amount;

C. Order the subject property be sold in accordance with the law and practice of this Court to pay said amount due to CMR in full; and

D. Grant such other and further relief in CMR's favor as this Court deems just and proper in this action.

**COUNT VII**
**CONSTRUCTION LIEN FORECLOSURE**
***CPF v. Civic***
***(pled in the alternative to Count III)***

172. CPF repeats the allegations contained in paragraphs 1 through 99 above.

173. This is an action to enforce a construction lien pursuant to Fla. Stat. chs. 713 and 85.

174. At all times material hereto, Civic was and is the owner of that certain real property commonly known as the Civic Towers, located at 1855 N.W. 15th Street, Miami, Miami-Dade County, Florida, and legally described as follows:

> **Tract B of ST. AUGUSTIN SUBDIVISION, according to the plat thereof, as recorded in Plat Book 129, Page 88, of the Public Records of Miami-Dade County, Florida.**

175. Civic recorded its Notice of Commencement for improvements to said property, a copy of which is attached as EXHIBIT O and incorporated herein by reference.

176. CPF first commenced performance of its duties under the Civic Towers Purchase Agreement attached as EXHIBIT G on January 26, 2017.

177. On or about February 27, 2017, CPF served Civic with a Notice to Owner, a copy of which is attached as **EXHIBIT W** and incorporated herein by reference. CPF further served PVGC with a true and correct copy of said Notice on or about that same date.

178. All conditions precedent to payment have occurred or have been performed.

179. CPF remains unpaid $376,038.50 under the Civic Towers Purchase Agreement attached as EXHIBIT G. Civic and PVGC have breached their duties in failing to make payment to CPF, which payment was due on June 19, 2017.

180. CPF has been caused to record a Claim of Lien on the subject property on June 26, 2017, at O.R. Book 30587, Pages 2271-2272, in the Public Records of Miami-Dade County, Florida, a copy of which is attached as **EXHIBIT X** and incorporated herein by reference.

181. CPF served a true and correct copy of said Claim of Lien on Civic on or about June 26, 2017, copy of the return receipt for which is attached as **EXHIBIT Y** and incorporated herein by reference.

182. CPF has been caused to retain counsel to maintain this action and has been obligated to pay reasonable attorneys' fees.

183. CPF is entitled to attorneys' fees in accordance with Fla. Stat. § 713.29.

*Wherefore* CPF prays that this court will:

A. Recognize CPF's Claim of Lien in the amount found to be due, plus pre- and post-judgment interest, costs and attorneys' fees;

B. Render a money judgment in CPF's favor for damages in that amount;

C. Order the subject property be sold in accordance with the law and practice of this Court to pay said amount due to CPF in full; and

D. Grant such other and further relief in CPF's favor as this Court deems just and proper in this action.

**COUNT VIII**
**CONSTRUCTION LIEN FORECLOSURE**
***CPF v. Civic Senior***
***(pled in the alternative to Count IV)***

184. CPF repeats the allegations contained in paragraphs 1 through 99 above.

185. This is an action to enforce a construction lien pursuant to Fla. Stat. chs. 713 and 85.

186. At all times material hereto, Civic Senior was and is the owner of that certain real property commonly known as the Civic Towers Senior, located at 1400 N.W. 19th Street, Miami, Miami-Dade County, Florida, and legally described as follows:

> **Tract A of T.M. ALEXANDER SUBDIVISION, according to the plat thereof, as recorded in Plat Book 123, Page 63, of the Public Records of Miami-Dade County, Florida.**

187. Civic Senior recorded its Notice of Commencement for improvements to said property, a copy of which is attached as EXHIBIT S and incorporated herein by reference.

188. CPF first commenced performance of its duties under the Civic Towers Senior Purchase Agreement attached as EXHIBIT H on January 26, 2017.

189. On or about February 27, 2017, CPF served Civic Senior with a Notice to Owner, a copy of which is attached as **EXHIBIT Z** and incorporated herein by reference. CPF further served PVGC with a true and correct copy of said Notice on or about that same date.

190. All conditions precedent to payment have occurred or have been performed.

191. CPF remains unpaid $276,634.70 under the Civic Towers Senior Purchase Agreement attached as EXHIBIT H. Civic Senior and PVGC have breached their duties in failing to make payment to CPF, which payment was due on June 19, 2017.

192. CPF has been caused to record a Claim of Lien on the subject property on June 26, 2017, at O.R. Book 30587, Pages 2269-2270, in the Public Records of Miami-Dade County, Florida, a copy of which is attached as **EXHIBIT AA** and incorporated herein by reference.

193. CPF served a true and correct copy of said Claim of Lien on Civic Senior on or about June 26, 2017, a copy of the return receipt for which is attached as **EXHIBIT BB** and incorporated herein by reference.

194. CPF has been caused to retain counsel to maintain this action and has been obligated to pay reasonable attorneys' fees.

195. CPF is entitled to attorneys' fees in accordance with Fla. Stat. § 713.29.

*Wherefore* CPF prays that this court will:

(a) Recognize CPF's Claim of Lien in the amount found to be due, plus pre- and post-judgment interest, costs and attorneys' fees;

(b) Render a money judgment in CPF's favor for damages in that amount;

(c) Order the subject property be sold in accordance with the law and practice of this Court to pay said amount due to CPF in full; and

(d) Grant such other and further relief in CPF's favor as this Court deems just and proper in this action.

**COUNT IX**
**BREACH OF CONTRACT**
***CMR v. PVGC***

196. CMR repeats the allegations contained in paragraphs 1 through 99 above.

197. PVGC breached the Civic Towers Subcontract Agreement attached as EXHIBIT E by failing to make payment and in the manner described above.

198. All conditions precedent to payment have occurred or have been performed.

199. CMR has been damaged by PVGC's breaches as described above.

200. PVGC owes CMR the amounts described above.

201. CMR has been caused to retain counsel to maintain this action and has been obligated to pay reasonable attorneys' fees.

202. CMR is entitled to attorneys' fees in accordance with Article XXII. C. of the Civic Towers Subcontract Agreement (EXHIBIT E).

203. In addition, PVGC owes to CMR all lost profits under the Civic Towers Subcontract Agreement (EXHIBIT E).

*Wherefore* CMR demands judgment for damages against PVGC, plus attorneys' fees, interest and costs.

## COUNT X
**BREACH OF CONTRACT**
***CMR v. PVGC***

204. CMR repeats the allegations contained in paragraphs 1 through 99 above.

205. PVGC breached the Civic Towers Senior Subcontract Agreement attached as EXHIBIT F by failing to make payment and in the manner described above.

206. All conditions precedent to payment have occurred or have been performed.

207. CMR has been damaged by PVGC's breaches as described above.

208. PVGC owes CMR the amounts described above.

209. CMR has been caused to retain counsel to maintain this action and has been obligated to pay reasonable attorneys' fees.

210. CMR is entitled to attorneys' fees in accordance with Article XXII. C. of the Civic Towers Senior Subcontract Agreement (EXHIBIT F).

211. In addition, PVGC owes to CMR all lost profits under the Civic Towers Senior Subcontract Agreement (EXHIBIT F).

*Wherefore* CMR demands judgment for damages against PVGC, plus attorneys' fees, interest and costs.

## COUNT XI
## BREACH OF CONTRACT
## *CPF v. PVGC*

212. CPF repeats the allegations contained in paragraphs 1 through 99 above.

213. PVGC breached the Civic Towers Purchase Agreement attached as EXHIBIT G by failing to make payment and in the manner described above.

214. All conditions precedent to payment have occurred or have been performed.

215. CPF has been damaged by PVGC's breaches as described above.

216. PVGC owes CPF the amounts described above.

217. CPF has been caused to retain counsel to maintain this action and has been obligated to pay reasonable attorneys' fees.

218. CPF is entitled to attorneys' fees in accordance with page 6 of the Civic Towers Purchase Agreement (EXHIBIT G).

219. In addition, PVGC owes to CPF all lost profits under the Civic Towers Purchase Agreement (EXHIBIT G).

*Wherefore* CPF demands judgment for damages against PVGC, plus attorneys' fees, interest and costs.

## COUNT XII
### BREACH OF CONTRACT
### *CPF v. PVGC*

220. CPF repeats the allegations contained in paragraphs 1 through 99 above.

221. PVGC breached the Civic Towers Senior Purchase Agreement attached as EXHIBIT H by failing to make payment and in the manner described above.

222. All conditions precedent to payment have occurred or have been performed.

223. CPF has been damaged by PVGC's breaches as described above.

224. PVGC owes CPF the amounts described above.

225. CPF has been caused to retain counsel to maintain this action and has been obligated to pay reasonable attorneys' fees.

226. CPF is entitled to attorneys' fees in accordance with page 6 of the Civic Towers Senior Purchase Agreement (EXHIBIT H).

227. In addition, PVGC owes to CPF all lost profits under the Civic Towers Senior Purchase Agreement (EXHIBIT H).

*Wherefore* CPF demands judgment for damages against PVGC, plus attorneys' fees, interest and costs.

## COUNT XIII
### UNJUST ENRICHMENT
### *CMR v. PVGC and Civic*
***(pled in the alternative to Count IX)***

228. CMR repeats the allegations contained in paragraphs 1 through 99 above.

229. CMR provided goods and services for the improvement of the Civic Towers property, and therefore conveyed a benefit upon PVGC and Civic, for which CMR has not been paid the value thereof.

230. In the event that all or part of the benefits conferred is not recoverable under prior Counts, CMR seeks recovery for same under this Count.

231. PVGC and Civic appreciated, requested and knowingly and voluntarily accepted the benefits conferred by CMR.

232. Upon information and belief, PVGC and Civic have not made payment to any party for the benefits conferred by CMR.

233. PVGC and Civic accepted and retained the benefits such that it would be inequitable for them to retain those benefits without paying for them.

*Wherefore* CMR demands judgment for damages against PVGC and Civic, plus interest and costs.

**COUNT XIV**
**UNJUST ENRICHMENT**
***CMR v. PVGC and Civic Senior***
***(pled in the alternative to Count X)***

234. CMR repeats the allegations contained in paragraphs 1 through 99 above.

235. CMR provided goods and services for the improvement of the Civic Towers Senior property, and therefore conveyed a benefit upon PVGC and Civic Senior, for which CMR has not been paid the value thereof.

236. In the event that all or part of the benefits conferred is not recoverable under prior Counts, CMR seeks recovery for same under this Count.

237. PVGC and Civic Senior appreciated, requested and knowingly and voluntarily accepted the benefits conferred by CMR.

238. Upon information and belief, PVGC and Civic Senior have not made payment to any party for the benefits conferred by CMR.

239. PVGC and Civic Senior accepted and retained the benefits such that it would be inequitable for them to retain those benefits without paying for them.

*Wherefore* CMR demands judgment for damages against PVGC and Civic Senior, plus interest and costs.

**COUNT XV**
**UNJUST ENRICHMENT**
***CPF v. PVGC and Civic***
***(pled in the alternative to Count XI)***

240. CPF repeats the allegations contained in paragraphs 1 through 99 above.

241. CPF provided goods and services for the improvement of the Civic Towers property, and therefore conveyed a benefit upon PVGC and Civic, for which CPF has not been paid the value thereof.

242. In the event that all or part of the benefit conferred is not recoverable under prior Counts, CPF seeks recovery for same under this Count.

243. PVGC and Civic appreciated, requested and knowingly and voluntarily accepted the benefits conferred by CPF.

244. Upon information and belief, PVGC and Civic have not made payment to any party for the benefits conferred by CPF.

245. PVGC and Civic accepted and retained the benefits such that it would be inequitable for them to retain those benefits without paying for them.

*Wherefore* CPF demands judgment for damages against PVGC and Civic, plus interest and costs.

**COUNT XVI**
**UNJUST ENRICHMENT**
***CPF v. PVGC and Civic Senior***
***(pled in the alternative to Count XII)***

246. CPF repeats the allegations contained in paragraphs 1 through 99 above.

247. CPF provided goods and services for the improvement of the Civic Towers Senior property, and therefore conveyed a benefit upon PVGC and Civic Senior, for which CPF has not been paid the value thereof.

248. In the event that all or part of the benefit conferred is not recoverable under prior Counts, CPF seeks recovery for same under this Count.

249. PVGC and Civic Senior appreciated, requested and knowingly and voluntarily accepted the benefits conferred by CPF.

250. Upon information and belief, PVGC and Civic Senior have not made payment to any party for the benefits conferred by CPF.

251. PVGC and Civic Senior accepted and retained the benefits such that it would be inequitable for them to retain those benefits without paying for them.

*Wherefore* CPF demands judgment for damages against PVGC and Civic Senior, plus interest and costs.

WHEREFORE, and by reason of the foregoing, the Coastal Parties respectfully request judgment in their favor, as more fully described above, and any further relief that this Court deems just and proper under the circumstances.

**DEMAND FOR JURY TRIAL**

The Coastal Parties hereby request a jury trial on all issues so triable.

Respectfully submitted on this 8th day of January, 2018.

/s/ Donald G. Peterson, Esq.
Donald G. Peterson, Esq.
Florida Bar No. 711616
Kelly A. Johnson, Esq.
Florida Bar No. 44273
PARRISH, WHITE & YARNELL, P.A.
3431 Pine Ridge Road, Suite 101
Naples, Florida 34109
Ph 239-566-2013; Fax 239-566-9561
donpeterson@napleslaw.us
kellyjohnson@napleslaw.us
***Attorneys for Coastal Maintenance & Restoration, Inc. and Coastal Prefab, Inc.***
PEM: ply@napleslaw.us
SEM: karlaschooley@napleslaw.us
stephaniegassiot@napleslaw.us

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 8th day of January, 2017, I electronically transmitted the foregoing document to the Clerk of the Court using the ECF System and transmittal of Electronic Filing to the following ECF registrants including but not limited to: Bruce D. Partington, Esq., Michael J. Schofield, Esq., Trevor Anthony Thompson, Esq., and Keith Lamothe Bell, Jr., Esq. [bpartington@clarkpartington.com] [mschofield@clarkpartington.com] [kbell@clarkpartington.com] [dwilkerson@clarkpartington.com] [jcarruth@clarkpartington.com] [btraina@clarkpartington.com] [ttorrez@clarkpartington.com] [tthompson@clarkpartington.com], Clark Partington, 125 West Romana Street, Suite 800 (32502), P.O. Box 13010, Pensacola, Florida 32591; Guy W. Harrison, Esq. [harrison@etchlaw.com] [rodriguez@etchlaw.com] [service@etchlaw.com], Etcheverry Harrison LLP, 150 South Pine Island Road, Suite 105, Fort Lauderdale, FL 33324; and Jeffrey M. Bell, Esq. [jbell@bankerlopez.com] [service-jbell@bankerlopez.com], Banker Lopez Gassler P.A., 1200 S. Pine Island Rd., Suite 170, Plantation, Florida 33324.

/s/ Donald G. Peterson, Esq.
Donald G. Peterson, Esq.
Florida Bar No. 711616