# EXHIBIT A

# AIA® Document A102™ – 2007

## *Standard Form of Agreement Between Owner and Contractor where the basis of payment is the Cost of the Work Plus a Fee with a Guaranteed Maximum Price*

**AGREEMENT** made as of the 8 day of February in the year 2017
*(In words, indicate day, month and year.)*

**BETWEEN** the **Owner**:
*(Name, legal status, address and other information)*
Civic Towers, LLLP, a Florida limited liability limited partnership
329 Primrose Road #347
Burlingame, CA 94011
Attn: Ryan Fuson
Telephone: (415) 691-7470
Email: ryan@redwoodhousing.com

and the **Contractor**:
*(Name, legal status, address and other information)*
Pete Vicari General Contractor, L.L.C., a Louisiana limited liability company
Florida License No. CGC1524695
1900 Destrehan Avenue
Harvey, Louisiana 70058
Attention: Pete Vicari
Telephone: 504-347-1196
Email: pete@petevicari.com

for the following **Project**:
*(Name, location and detailed description)*
Civic Towers
1855 NW 15th Avenue
Miami, Florida
Exterior and interior renovations of a 17 story residential facility, consisting of 196 residential units, a community room, on-site management office, laundry room facility and outdoor covered picnic area

The **Architect**:
*(Name, legal status, address and other information)*
Perez & Perez Architects Planners, Inc., a Florida corporation
2121 Douglas Road
Miami, Florida 33125
Attn: Mario Mas
Telephone: (305) 44404545
Email: mariom@perezperez.com

The Owner and Contractor agree as follows.

**ADDITIONS AND DELETIONS:**
The author of this document has added information needed for its completion. The author may also have revised the text of the original AIA standard form. An *Additions and Deletions Report* that notes added information as well as revisions to the standard form text is available from the author and should be reviewed. A vertical line in the left margin of this document indicates where the author has added necessary information and where the author has added to or deleted from the original AIA text.

This document has important legal consequences. Consultation with an attorney is encouraged with respect to its completion or modification.

This document is not intended for use in competitive bidding.

AIA Document A201™–2007, General Conditions of the Contract for Construction, is adopted in this document by reference. Do not use with other general conditions unless this document is modified.



AIA Document A102™ – 2007 (formerly A111™ – 1997). Copyright © 1920, 1925, 1951, 1958, 1961, 1963, 1967, 1974, 1978, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 17:10:44 on 02/01/2017 under Order No.4557178538_1 which expires on 02/11/2017, and is not for resale.

**TABLE OF ARTICLES**


1 THE CONTRACT DOCUMENTS

2 THE WORK OF THIS CONTRACT

3 RELATIONSHIP OF THE PARTIES

4 DATE OF COMMENCEMENT AND SUBSTANTIAL COMPLETION

5 CONTRACT SUM

6 CHANGES IN THE WORK

7 COSTS TO BE REIMBURSED

8 COSTS NOT TO BE REIMBURSED

9 DISCOUNTS, REBATES AND REFUNDS

10 SUBCONTRACTS AND OTHER AGREEMENTS

11 ACCOUNTING RECORDS

12 PAYMENTS

13 DISPUTE RESOLUTION

14 TERMINATION OR SUSPENSION

15 MISCELLANEOUS PROVISIONS

16 ENUMERATION OF CONTRACT DOCUMENTS

17 INSURANCE AND BONDS


**ARTICLE 1 THE CONTRACT DOCUMENTS**

The Contract Documents consist of this Agreement, Conditions of the Contract (General, Supplementary and other Conditions), Drawings, Specifications, Addenda issued prior to execution of this Agreement, other documents listed in this Agreement and Modifications issued after execution of this Agreement, all of which form the Contract, and are as fully a part of the Contract as if attached to this Agreement or repeated herein. The Contract represents the entire and integrated agreement between the parties hereto and supersedes prior negotiations, representations or agreements, either written or oral. If anything in the other Contract Documents, other than a Modification, is inconsistent with this Agreement, this Agreement shall govern. Whenever there is a reference to the "**General Conditions**", that reference shall mean the AIA Document A201 (2007 edition), General Conditions of the Contract for Construction, as modified by Owner and Contractor and attached hereto as **Exhibit A.**

**ARTICLE 2 THE WORK OF THIS CONTRACT**

The Contractor shall fully execute the Work described in the Contract Documents and reasonably inferable as necessary to produce the results indicated by the Contract Documents, except as specifically indicated in the Contract Documents to be the responsibility of others.

Except for any design-build systems delegated to the Contractor in the Contract Documents, to the extent that the Owner requires any value engineering or design services, the Owner acknowledges that such services are advisory and are not professional design services and the Contractor shall have no design liability to the Owner or the

Init.

/

AIA Document A102™ – 2007 (formerly A111™ – 1997). Copyright © 1920, 1925, 1951, 1958, 1961, 1963, 1967, 1974, 1978, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 17:10:44 on 02/01/2017 under Order No.4557178538_1 which expires on 02/11/2017, and is not for resale.

Architect or its consultants for such services requested by the Owner and rendered by the Contractor.

## ARTICLE 3 RELATIONSHIP OF THE PARTIES

The Contractor accepts the relationship of trust and confidence established by this Agreement and covenants with the Owner to cooperate with the Architect and exercise the Contractor's skill and judgment in furthering the interests of the Owner; to furnish efficient business administration and supervision; to furnish at all times an adequate supply of workers and materials; and to perform the Work in an expeditious and economical manner consistent with the Owner's interests. The Owner agrees to furnish and approve, in a timely manner, information required by the Contractor and to make payments to the Contractor in accordance with the requirements of the Contract Documents. The Contractor is an independent contractor, and not an agent or employee, of the Owner.

## ARTICLE 4 DATE OF COMMENCEMENT AND SUBSTANTIAL COMPLETION

**§ 4.1** The date of commencement of the Work shall be the date

*(Paragraphs deleted)*

that is five (5) days after the latest to occur of the following: (a) the date of issuance of all required permits and approvals from all applicable governing agencies or authorities necessary to commence the construction of the Project in accordance with the Contract Documents; (b) the date a written notice to proceed is issued by the Owner to the Contractor; or (c) the Owner records the Notice of Commencement. The initial construction schedule for the Work (the "**Construction Schedule**"), including the Owner's occupancy requirements is attached hereto as **Exhibit B.** The Construction Schedule shall be updated in accordance with Section 3.10 of the General Conditions.

**§ 4.2** The Contract Time shall be measured from the date of commencement.

**§ 4.3** The Contractor shall achieve Substantial Completion of the entire Work not later than Two Hundred Seventy (270) days from the date of commencement,

*(Paragraphs deleted)*

subject to adjustments of this Contract Time as provided in the Contract Documents. Final completion of the Work (*i.e.* as described in Section 12.2.1.1 below) shall be achieved no later than sixty (60) days after the date of Substantial Completion, subject to adjustments of this Contract Time as provided in the Contract Documents.

**§ 4.4** The parties hereto agree that the Owner will suffer damages if the Work is not complete by the period within which preceding Section 4.3 requires Substantial Completion of the Work ("**Substantial Completion Deadline**"). The specific damages for delay in completion of the Work by the Substantial Completion Deadline are difficult to determine at this time but the parties agree that the liquidated amount specified in this Section represent reasonable estimates of the damages the Owner will incur for each day of delay beyond the Substantial Completion Deadline, and bears a reasonable relationship to the Owner's risk of loss due to the Contractor's failure to meet the Substantial Completion Deadline. Accordingly, as liquidated damages, and not as a penalty, the Contractor shall pay to the Owner Five Thousand Dollars ($5,000) per day for each day of delay in achieving Substantial Completion of the Work beyond the date that is sixty (60) days after the Substantial Completion Deadline. The Owner may deduct liquidated damages prescribed in this Section from any unpaid amounts then or thereafter due the Contractor under this Agreement and any liquidated damages not so deducted shall be payable to the Owner by the Contractor upon demand by the Owner plus interest from ten (10) days after the date of demand at the rate specified in Section 15.2 of this Agreement. It is further mutually understood and agreed that the Owner's assessment of liquidated damages for delays is intended to compensate the Owner solely for the Contractor's failure to complete the Work in the Contract Time and shall not release the Contractor from liability from any other breach of Contract Document requirements. If the liquidated damages set forth herein are determined by a court of competent jurisdiction to be unenforceable, the Owner instead shall be entitled to recover those actual delay damages that it sustained as a result of the Contractor's failure to timely achieve Substantial Completion of the Work. The Owner's right to liquidated damages hereunder is self-executing and no Claim by the Owner is required as a condition precedent to the Owner's right to offset liquidated damages from amounts otherwise due the Contractor or to otherwise pursue recovery of liquidated damages. If the Contractor disputes any liquidated damages to which the Owner asserts it is entitled, the Contractor may make a Claim in accordance with the terms of the Contract Documents.

## ARTICLE 5 CONTRACT SUM

**§ 5.1** The Owner shall pay the Contractor the Contract Sum in current funds for the Contractor's performance of the Contract. The Contract Sum is the Cost of the Work (defined in Article 7) plus the Contractor's Fee, Overhead and General Requirements Costs (as each are defined below). When computing Contractor's Fee, Overhead and



**AIA Document A102™ – 2007 (formerly A111™ – 1997). Copyright © 1920, 1925, 1951, 1958, 1961, 1963, 1967, 1974, 1978, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved.** WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 17:10:44 on 02/01/2017 under Order No.4557176538_1 which expires on 02/11/2017, and is not for resale.

General Requirements Costs, the Cost of the Work shall not include (a) costs for procuring (as distinct from installation costs) appliances, window treatments, artwork or carpeting (e.g. carpet, carpet tile, padding, adhesives, edging, etc.) or (b) any of the following costs incurred by Contractor: building permit fees, impact fees, builders risk insurance premiums, and bond premiums; or (c) Contractor's Fee, Overhead and General Requirements Costs (which are not included in the Cost of the Work).

**§ 5.1.1** The **"Contractor's Fee"**:
*(State a lump sum, percentage of Cost of the Work or other provision for determining the Contractor's Fee.)*

The Owner shall pay the Contractor six percent (6%) of the Cost of the Work, exclusive of the Contractor's Fee, Overhead and General Requirements Costs (which are not included in the Cost of the Work), for **"Contractor's Fee"** as set forth in the schedule of values attached hereto and incorporated herein as **Exhibit C**, but in no event shall the Contractor's Fee exceed six percent (6%) of the Cost of Work, exclusive of bond and insurance costs and exclusive of the Contractor's Fee, Overhead and General Requirements Costs (which are not included in the Cost of the Work).

**§ 5.1.2** The Owner shall also pay the Contractor: (a) an additional two percent (2%) of the Cost of the Work, exclusive of the Contractor's Fee, Overhead and General Requirements Costs (which are not included in the Cost of the Work) for **"Overhead"**, as set forth in **Exhibit C**, but in no event shall the Contractor's Overhead exceed two percent (2%) of the Cost of the Work, exclusive of the Contractor's Fee, Overhead and General Requirements Costs (which are not included in the Cost of the Work) and (b) an additional six percent (6%) of the Cost of the Work, exclusive of the Contractor's Fee, Overhead and General Requirements Costs (which are not included in the Cost of the Work) for **"General Requirements Costs"**, as set forth in **Exhibit C**, but in no event shall the General Requirements Costs exceed six percent (6%) of the Cost of the Work, exclusive of the Contractor's Fee, Overhead and General Requirements Costs (which are not included in the Cost of the Work).

**§ 5.1.3** The method of adjustment of the Contractor's Fee, Overhead and General Requirements Costs for changes in the Work:
The Contractor's Fee for changes in the Work shall be the same percentage of the actual allowable costs for labor, services and materials to accomplish the additional Work based on the Cost of Work as set forth in Section 5.1.1 above.

The Contractor's Overhead shall be the same percentage of the actual allowable costs for labor, services and materials to accomplish the additional Work based on the Cost of Work as set forth in Section 5.1.2 above.

The Contractor's General Requirements Costs for changes in the Work shall be the same percentage of the actual allowable costs for labor, services and materials to accomplish the additional Work based on the Cost of Work as set forth in Section 5.1.2 above.

In the event of a reduction in the scope of Work, the Contractor's Fee, Overhead and General Requirements Costs shall also be reduced by amounts computed by multiplying the rates above by the amount of the savings which result from the reduced scope of Work.

**§ 5.1.4** Limitations, if any, on a Subcontractor's overhead and profit for changes in the cost of its portion of the Work:

Subcontractor overhead and profit, combined, on additional Work shall not exceed fourteen percent (14%) of the cost of the additional Work to be performed by the Subcontractor.

**§ 5.1.5** Rental rates for Contractor-owned equipment shall not exceed eighty-five percent (85%) the standard rate paid at the place of the Project.

**§ 5.1.6** Unit prices, if any: See schedule of values attached hereto as **Exhibit C**.

*(Paragraph deleted)*

Init.

/

AIA Document A102™ – 2007 (formerly A111™ – 1997). Copyright © 1920, 1925, 1951, 1958, 1961, 1963, 1967, 1974, 1978, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 17:10:44 on 02/01/2017 under Order No.4557178538_1 which expires on 02/11/2017, and is not for resale.

Such unit prices shall be considered complete and include (a) all materials, equipment, labor, delivery, installation, overhead and profit and (b) any other costs or expenses in connection with, or incidental to, the performance of that portion of the Work to which such unit prices apply.
*(Table deleted)*

**§ 5.2 GUARANTEED MAXIMUM PRICE**

**§ 5.2.1** The Contract Sum is guaranteed by the Contractor not to exceed Nineteen Million, Three Hundred Forty-One Thousand, One Hundred Thirty-Six Dollars ($ 19,341,136.00), subject to additions and deductions by Change Order as provided in the Contract Documents. Such maximum sum is referred to in the Contract Documents as the **"Guaranteed Maximum Price"** or **"GMP"**. Costs which would cause the Guaranteed Maximum Price to be exceeded shall be paid by the Contractor without reimbursement by the Owner.
*(Paragraphs deleted)*
On the other hand, in the event that the final Contract Sum (i.e. the Cost of the Work plus the Contractor's Fee, Overhead and General Requirements Costs) is less than the Guaranteed Maximum Price (as it may have been adjusted in accordance with the terms of the Contract Documents), the Contractor shall not be entitled to any additional payment on account of such difference. Notwithstanding anything in the Contract Documents to the contrary, the maximum amount payable to the Contractor under the Contract is the Cost of the Work plus fourteen percent (14%) for the Contractor's Fee, Overhead and General Requirements Costs (as such amounts are to be calculated pursuant to Section 5.1), combined (i.e. the Contract Sum).

**§ 5.2.2** The Guaranteed Maximum Price is based on the following alternates, if any, which are described in the Contract Documents and are hereby accepted by the Owner:
*(Paragraphs deleted)*
See schedule of values attached hereto as **Exhibit C**

**§ 5.2.3** Allowances included in the Guaranteed Maximum Price, if any:
*(Paragraphs deleted)*
See schedule of values attached hereto as **Exhibit C**.
*(Table deleted)*

**§ 5.2.4** Assumptions, if any, on which the Guaranteed Maximum Price is based:

See **Exhibit C, final page.**

**§ 5.2.5** By executing this Agreement and furnishing the Owner with a Guaranteed Maximum Price based on a detailed schedule of values, attached as **Exhibit C**, and the Construction Schedule, attached as **Exhibit B**, the Contractor represents and warrants that the Contract Documents, including the Drawings and Specifications identified in **Exhibit D**, as well as other materials, and information furnished the Contractor as of the date of this Agreement have described the scope, construction requirements, and design of the Work in detail sufficient to enable the Contractor to establish firmly the Guaranteed Maximum Price, Contract Time and the Construction Schedule, subject to the Contractor's clarifications, qualifications, assumptions and/or exclusions specified on the final page of **Exhibit C**.

**§ 5.2.6** The Contractor shall develop and implement a detailed system of cost control and cash flow projections that will provide the Owner with timely information as to the anticipated total Cost of the Work. The cost control system shall compare the Guaranteed Maximum Price with the actual cost for activities in progress and estimates for uncompleted tasks and proposed changes. This information shall be reported to the Owner in writing at no less than monthly intervals.

**§ 5.2.7** The Guaranteed Maximum Price shall not include a Contractor's contingency.

## ARTICLE 6 CHANGES IN THE WORK

**§ 6.1** Adjustments to the Guaranteed Maximum Price on account of changes in the Work may be determined by any of the methods listed in Section 7.3.3 of the General Conditions.

**§ 6.2** In calculating adjustments to subcontracts (except those awarded with the Owner's prior consent on the basis of cost plus a fee), the terms "cost" and "fee" as used in Section 7.3.3.3 of the General Conditions, and the term "costs" as used in Section 7.3.7 of the General Conditions shall have the meanings assigned to them in the General Conditions and shall not be modified by Articles 5, 7 and 8 of this Agreement. Adjustments to subcontracts awarded



AIA Document A102™ – 2007 (formerly A111™ – 1997). Copyright © 1920, 1925, 1951, 1958, 1961, 1963, 1967, 1974, 1978, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 17:10:44 on 02/01/2017 under Order No.4557178538_1 which expires on 02/11/2017, and is not for resale.

with the Owner's prior consent on the basis of cost plus a fee shall be calculated in accordance with the terms of those subcontracts. Notwithstanding the foregoing, Subcontractors' mark-up for overhead and profit shall be limited as specified in Section 5.1.4 above.

**§ 6.3** In calculating adjustments to the Guaranteed Maximum Price, unless the Owner and Contractor agree in writing to a lump sum amount, the terms "cost" and "costs" as used in the above-referenced provisions of the General Conditions shall mean the Cost of the Work as defined in Article 7 of this Agreement, the term "fee" shall mean the Contractor's Fee as defined in Section 5.1.1 of this Agreement, and the term "Overhead and General Requirements Costs" shall mean those items defined in Section 5.1.2. Deductive Change Orders and Construction Change Directives shall constitute a reduction in the amount of the GMP with a commensurate reduction in all affected line items within the GMP.

**§ 6.4** If no specific provision is made in Article 5 for adjustment of the Contractor's Fee in the case of changes in the Work, or if the extent of such changes is such, in the aggregate, that application of the adjustment provisions of Article 5 will cause substantial inequity to the Owner or Contractor, the Contractor's Fee shall be equitably adjusted on the same basis that was used to establish the Fee for the original Work, and the Guaranteed Maximum Price shall be adjusted accordingly.

## ARTICLE 7 COSTS TO BE REIMBURSED

### § 7.1 COST OF THE WORK

**§ 7.1.1** The term **"Cost of the Work"** shall mean costs necessarily incurred by the Contractor in the proper performance of the Work. Such costs shall be at rates not higher than the standard paid at the place of the Project, except with prior written consent of the Owner. The Cost of the Work shall include only the items set forth in this Article 7. Items of Work not included in this Article 7 are compensable only as part of Contractor's Fee, General Requirements Costs or Overhead and are otherwise not reimbursable. **Further, notwithstanding anything in this Section 7.1 to the contrary, in no event shall an item that is included or is required to be included, pursuant the applicable standards of the Florida Housing Finance Corporation ("FHFC"), in the General Requirements Costs or Overhead be included as a "Cost of the Work" pursuant to this Article 7 and the Contractor shall not charge for costs included in General Requirements Costs or Overhead separately as a Cost of the Work in an Application for Payment (i.e. there shall be no duplication of such costs).**

**§ 7.1.2** Where any cost is subject to the Owner's prior approval, the Contractor shall obtain this approval in writing prior to incurring the cost. The parties shall endeavor to identify any such costs prior to executing this Agreement.

### § 7.2 LABOR COSTS

**§ 7.2.1** Wages of construction workers directly employed by the Contractor to perform the construction of the Work at the site or, with the Owner's prior approval, at off-site workshops, together with labor burden equal to sixty percent (60%) of such wages.

**§ 7.2.2** Intentionally deleted.

**§ 7.2.3** Intentionally deleted.

**§ 7.2.4** Intentionally deleted.

**§ 7.2.5** Subject to conformance with the applicable standards of the FHFC, if any, non-discretionary bonuses, profit sharing, incentive compensation and any other discretionary payments paid to anyone hired by the Contractor or paid to any Subcontractor or vendor, but only with the Owner's prior approval of specific amounts and recipients requested by the Contractor in writing, which request must be accompanied by the Contractor's rationale for paying said amounts.

### § 7.3 SUBCONTRACT COSTS

Payments made by the Contractor to Subcontractors in accordance with the requirements of the subcontracts.

### § 7.4 COSTS OF MATERIALS AND EQUIPMENT INCORPORATED IN THE COMPLETED CONSTRUCTION

**§ 7.4.1** Costs, including transportation and storage, of materials and equipment incorporated or to be incorporated in the completed construction.

Init.

/

AIA Document A102™ – 2007 (formerly A111™ – 1997). Copyright © 1920, 1925, 1951, 1958, 1961, 1963, 1967, 1974, 1978, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 17:10:44 on 02/01/2017 under Order No.4557178538_1 which expires on 02/11/2017, and is not for resale.

**§ 7.4.2** Costs of materials described in the preceding Section 7.4.1 in excess of those actually installed to allow for reasonable waste and spoilage. Unused excess materials, if any, shall become the Owner's property at the completion of the Work or, at the Owner's option, shall be sold by the Contractor. Any amounts realized from such sales shall be credited to the Owner as a deduction from the Cost of the Work.

**§ 7.5 COSTS OF OTHER MATERIALS AND EQUIPMENT, TEMPORARY FACILITIES AND RELATED ITEMS**

**§ 7.5.1** Costs of transportation, storage, installation, maintenance, dismantling and removal of materials, supplies, temporary facilities, machinery, equipment and hand tools not customarily owned by construction workers that are provided by the Contractor at the site and fully consumed in the performance of the Work. Costs of materials, supplies, temporary facilities, machinery, equipment and tools that are not fully consumed shall be based on the cost or value of the item at the time it is first used on the Project site less the value of the item when it is no longer used at the Project site. Costs for items not fully consumed by the Contractor shall mean fair market value.

**§ 7.5.2** Rental charges for temporary facilities, machinery, equipment and hand tools not customarily owned by construction workers that are provided by the Contractor at the site and costs of transportation, installation, minor repairs, dismantling and removal. The total rental cost of any Contractor-owned item may not exceed the purchase price of any comparable item. Rates of Contractor-owned equipment and quantities of equipment shall be subject to the Owner's prior approval.

**§ 7.5.3** Costs of removal of debris from the site of the Work and its proper and legal disposal.

**§ 7.5.4** Costs of document reproductions, facsimile transmissions and long-distance telephone calls, postage and parcel delivery charges, telephone service at the site and reasonable petty cash expenses of the site office.

**§ 7.5.5** Costs of materials and equipment suitably stored off the site at a mutually acceptable location, subject to the Owner's prior approval.

**§ 7.6 MISCELLANEOUS COSTS**

**§ 7.6.1** Premiums for that portion of insurance and bonds required by the Contract Documents that can be directly attributed to this Contract. Self-insurance for either full or partial amounts of the coverages required by the Contract Documents, with the Owner's prior approval.

**§ 7.6.2** Sales, use or similar taxes imposed by a governmental authority that are related to the Work and for which the Contractor is liable.

**§ 7.6.3** Fees and assessments for the building permit and for other permits, licenses and inspections for which the Contractor is required by the Contract Documents to pay. The costs for inspection by a governmental authority are only a Cost of the Work for the initial inspection and one re-inspection; any cost for subsequent re-inspection is not a Cost of the Work and such cost shall be borne by the party necessitating the additional re-inspections.

**§ 7.6.4** Fees of laboratories for tests required of the Contractor by the Contract Documents, except those related to defective or nonconforming Work for which reimbursement is excluded by Section 13.5.3 of the General Conditions or by other provisions of the Contract Documents, and which do not fall within the scope of Section 7.7.3.

**§ 7.6.5** Royalties and license fees paid for the use of a particular design, process or product required by the Contract Documents; the cost of defending suits or claims for infringement of patent rights arising from such requirement of the Contract Documents; and payments made in accordance with legal judgments against the Contractor resulting from such suits or claims and payments of settlements made with the Owner's prior approval. However, such costs of legal defenses, judgments and settlements shall not be included in the calculation of the Contractor's Fee or subject to the Guaranteed Maximum Price. If such royalties, fees and costs are excluded by the last sentence of Section 3.17 of the General Conditions or other provisions of the Contract Documents, then they shall not be included in the Cost of the Work.

**§ 7.6.6** Costs for electronic equipment and software, directly related to the Work with the Owner's prior approval.

Init.

/

**AIA Document A102™ – 2007 (formerly A111™ – 1997).** Copyright © 1920, 1925, 1951, 1958, 1961, 1963, 1967, 1974, 1978, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved.** WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 17:10:44 on 02/01/2017 under Order No.4557178638_1 which expires on 02/11/2017, and is not for resale.

**§ 7.6.7** Deposits lost for causes other than the Contractor's negligence or failure to fulfill a specific responsibility in the Contract Documents.

**§ 7.6.8** Intentionally deleted.

**§ 7.6.9** Subject to the Owner's prior approval, expenses incurred in accordance with the Contractor's standard written personnel policy for relocation and temporary living allowances of the Contractor's personnel required for the Work.

**§ 7.6.10** To the extent permitted by the FHFC, that portion of the reasonable expenses of the Contractor's supervisory or administrative personnel incurred while traveling in discharge of duties connected with the Work. Expenses which the Contractor reimburses personnel for the use of their personal vehicle are a Cost of the Work. Costs of vehicles owned by the Contractor and assigned to personnel engaged in the Project are considered a Cost of the Work and will be charged at the Contractor's standard rates.

**§ 7.7 OTHER COSTS AND EMERGENCIES**

**§ 7.7.1** Other costs incurred in the performance of the Work if, and to the extent, approved in advance in writing by the Owner.

**§ 7.7.2** Costs incurred in taking action to prevent threatened damage, injury or loss in case of an emergency affecting the safety of persons and property, as provided in Section 10.4 of the General Conditions.

**§ 7.7.3** Costs of repairing damaged Work executed by the Contractor, Subcontractors or suppliers, provided that such damage was not caused by negligence or failure to fulfill a specific responsibility of the Contractor under the Contract Documents, and only to the extent that the cost of repair is not recovered by the Contractor from insurance, sureties, Subcontractors, suppliers, or others.

**§ 7.8 RELATED PARTY TRANSACTIONS**

**§ 7.8.1** Consistent with FHFC regulations, under no circumstances shall the Contractor contract with any Subcontractor or supplier or any other person or entity providing labor, work or services or furnishing materials or equipment to the Project who is a related party to the Contractor. For purposes of Section 7.8, the term "related party" shall mean a parent, subsidiary, affiliate or other entity having common ownership or management with the Contractor; any entity in which any stockholder in, or management employee of, the Contractor owns any interest in excess of ten percent (10%) in the aggregate; or any person or entity which has the right to control the business or affairs of the Contractor. The term "related party" includes any member of the immediate family of any person identified above.

**§ 7.8.2** Intentionally deleted.

## ARTICLE 8 COSTS NOT TO BE REIMBURSED

**§ 8.1** The Cost of the Work shall not include the items listed below:

- .1 Salaries and other compensation of the Contractor's personnel stationed at the Contractor's principal office or offices and site office, except as specifically provided in Section 7.1;
- .2 Expenses of the Contractor's principal office and offices other than the site office;
- .3 Overhead and General Requirements Costs;
- .4 The Contractor's capital expenses, including interest on the Contractor's capital employed for the Work;
- .5 Costs due to the negligence or failure of the Contractor, Subcontractors and suppliers or anyone directly or indirectly employed by any of them or for whose acts any of them may be liable to fulfill a specific responsibility of the Contract; provided, however, the Contractor shall be entitled to be paid as part of the Cost of the Work for those items to be completed or corrected prior to final payment (e.g. punch list work) in accordance with Section 9.8.2 of the General Conditions;
- .6 Any cost not specifically and expressly described in Article 7;
- .7 Costs, other than costs included in Change Orders approved by the Owner, that would cause the Guaranteed Maximum Price to be exceeded;
- .8 Cost to repair or correct damaged or non-conforming Work executed by the Contractor, Subcontractors or suppliers, except as provided in Section 7.7.3; and



AIA Document A102™ – 2007 (formerly A111™ – 1997). Copyright © 1920, 1925, 1951, 1958, 1961, 1963, 1967, 1974, 1978, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 17:10:44 on 02/01/2017 under Order No.4557176538_1 which expires on 02/11/2017, and is not for resale.

.9 Legal, mediation and arbitrations costs, including attorneys' fees, incurred by the Contractor.

## ARTICLE 9 DISCOUNTS, REBATES AND REFUNDS

**§ 9.1** Cash discounts obtained on payments made by the Contractor shall reduce the Cost of the Work. The Contractor shall make provisions so that trade discounts, rebates, refunds and amounts received from sales of surplus materials and equipment can be obtained, including giving the Owner seven (7) days' prior written notice of any potential discount, rebate or refund and an opportunity to furnish funds necessary to obtain such discount, rebate or refund. With respect to surplus materials and equipment purchased as part of the Cost of the Work, at the time of final completion of the Work, such surplus items shall at the Owner's written election either be: (a) delivered to the Owner, (b) be sold at a sale pursuant to terms reasonably acceptable to the Owner and the value realized shall be paid to the Owner, or (c) be retained by the Contractor and removed from the Project site.

**§ 9.2** Discounts obtained in accordance with the provisions of Section 9.1 shall be credited to the Owner as a deduction from the Cost of the Work. The Contractor's Fee, Overhead and General Requirements Costs shall be calculated on the net Cost of the Work after deducting any such discounts that have been obtained.

## ARTICLE 10 SUBCONTRACTS AND OTHER AGREEMENTS

**§ 10.1** Those portions of the Work that the Contractor does not customarily perform with the Contractor's own personnel shall be hard bid and performed under written subcontracts. The Owner may designate specific persons from whom, or entities from which, the Contractor shall obtain bids. The Contractor shall obtain at least three (3) bids on all of the Work, including obtaining at least three (3) third-party bids on any Work that Contractor desires to self-perform, unless the Owner agrees in writing that the subcontracted work may be provided by a singular bidder or reduced number of bidders. The Contractor shall prepare and submit its own bids on any Work it intends to self-perform. The Contractor shall obtain bids from Subcontractors, from itself, and from suppliers of materials or equipment fabricated especially for the Work and shall deliver to the Owner and the Architect all such bids (without redaction), a bid recap table, and copies of the bid solicitation materials provided by Contractor. The Owner shall then determine, with the advice of the Contractor and the Architect, which bids will be accepted. The Contractor shall not be required to contract with anyone to whom the Contractor has reasonable objection.

**§ 10.1.1** The Contractor acknowledges that: (a) the Contractor may not self-perform any Work without the approval of the Board of the FHFC; and (b) not more than twenty percent (20%) of the Cost of the Work may be subcontracted to any one entity, with the exception of a Subcontractor contracted to deliver the building shell of a building of at least five (5) stories which may not have more than thirty-one percent (31%) of the Cost of the Work in a subcontract, unless otherwise approved by the Board of the FHFC.

**§ 10.2** When a specific bidder (1) is recommended to the Owner by the Contractor; (2) is qualified to perform that portion of the Work; and (3) has submitted a bid that conforms to the requirements of the Contract Documents without reservations or exceptions, but the Owner requires that another bid be accepted, then the Contractor may require that a Change Order be issued to adjust the Guaranteed Maximum Price by the difference between the bid of the person or entity recommended to the Owner by the Contractor and the amount of the subcontract or other agreement actually signed with the person or entity designated by the Owner.

**§ 10.3** Subcontracts or other agreements shall conform to the applicable payment provisions of this Agreement, and shall not be awarded on the basis of cost plus a fee and shall not provide for retainage of less than ten percent (10%) without the prior written consent of the Owner. If the Owner consents to a subcontract being awarded on a cost-plus a fee basis, the Contractor shall provide in the subcontract for the Owner to receive the same audit rights with regard to the Subcontractor as the Owner receives with regard to the Contractor in Article 11, below.

**§ 10.4** As further detailed in Section 5.3 of the General Conditions, the Contractor shall incorporate the terms of this Agreement into each subcontract entered into by the Contractor for the purpose of obtaining labor, services, or materials for performance of the Work, such that the provisions of the Contract Documents "flow down" and bind the Subcontractor to the extent applicable to the Subcontractor's scope under the subcontract. The Contractor shall also require that each of its Subcontractors and materials suppliers incorporate the terms of this Agreement into their respective subcontracts related to the Project. This obligation shall specifically include the provision for waiver of trial by jury with respect to any and all claims arising out of the performance of any and all obligations under this Agreement and all subcontracts related to the Project.

Init.

/

AIA Document A102™ – 2007 (formerly A111™ – 1997). Copyright © 1920, 1925, 1951, 1958, 1961, 1963, 1967, 1974, 1978, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 17:10:44 on 02/01/2017 under Order No 4557178538_1 which expires on 02/11/2017, and is not for resale.

## ARTICLE 11 ACCOUNTING RECORDS

The Contractor shall keep full and detailed records and accounts related to the Cost of the Work and exercise such controls as may be necessary for proper financial management under this Contract and to substantiate all costs incurred. The accounting and control systems shall be satisfactory to the Owner. The Owner and the Owner's auditors shall, during regular business hours and upon reasonable notice, be afforded access to, and shall be permitted to audit and copy, the Contractor's records and accounts, including complete documentation supporting accounting entries, books, correspondence, instructions, drawings, receipts, subcontracts, Subcontractor's proposals, purchase orders, vouchers, memoranda and other data relating to this Contract. The Contractor shall preserve these records for a period of three years after final payment, or for such longer period as may be required by law.

## ARTICLE 12 PAYMENTS

### § 12.1 PROGRESS PAYMENTS

**§ 12.1.1** Based upon Applications for Payment and all required supporting documentation submitted to the Owner and the Architect by the Contractor and Certificates for Payment issued by the Architect, the Owner shall make progress payments on account of the Contract Sum to the Contractor as provided below and elsewhere in the Contract Documents.

**§ 12.1.2** The period covered by each Application for Payment shall be one calendar month ending on the last day of the month.

**§ 12.1.3** Provided that a properly completed Application for Payment, together with all supporting documentation and information required by the Contract Documents, is received by the Architect and the Owner not later than the 25th day of a month, the Owner shall make payment of the certified amount to the Contractor not later than the 20th day of the following month. If an Application for Payment and all supporting documentation and information required by the Contract Documents is received by the Architect and the Owner after the application date fixed above, the Application shall be processed with the following month's Application for Payment.

**§ 12.1.4** With each Application for Payment, the Contractor shall submit payrolls, petty cash accounts, receipted invoices or invoices with check vouchers attached, and any other evidence required by the Owner or Architect to demonstrate that cash disbursements already made by the Contractor on account of the Cost of the Work equal or exceed (1) progress payments already received by the Contractor; less (2) that portion of those payments attributable to the Contractor's Fee, Overhead and General Requirements Costs; plus (3) payrolls for the period covered by the present Application for Payment. The Contractor shall submit to the Owner before the first Application for Payment, all certificates or policies of insurance required by the Contract Documents and a listing of all Subcontractors and material suppliers (awarded at that time).

**§ 12.1.5** Each Application for Payment shall be notarized and provided in the form of AIA Document G702–1992, with the Continuation Sheet based on AIA Document G703-1992, and shall be itemized by operations completed in accordance with the schedule of values that has been submitted by the Contractor in accordance with the Contract Documents and approved in writing by the Owner. All blanks and columns on the forms must be filled in including every percentage completed figure. Applications for Payment shall show the percentage of completion of each portion of the Work as of the end of the period covered by the Application for Payment. The initial schedule of values and each update thereto shall allocate the entire Guaranteed Maximum Price among the various portions of the Work, except that the Contractor's Fee, Overhead and General Requirements Costs shall each be shown as single separate items. The schedule of values and all updates thereto shall be prepared in such form and supported by such data to substantiate its accuracy as the Architect or the Owner may require. The most recent schedule of values approved by the Owner shall be used as a basis for reviewing the Contractor's Applications for Payment. The initial schedule of values is attached hereto and incorporated herein by reference as **Exhibit C** and shall be in the same form as **Exhibit N** (General Contractor Cost Certification).

**§ 12.1.6** Applications for Payment shall show the percentage of completion of each portion of the Work as of the end of the period covered by the Application for Payment. The percentage of completion shall be the lesser of (1) the percentage of that portion of the Work which has actually been completed; or (2) the percentage obtained by dividing (a) the expense that has actually been incurred by the Contractor on account of that portion of the Work for which the Contractor has made or intends to make actual payment prior to the next Application for Payment by (b) the share of the Guaranteed Maximum Price allocated to that portion of the Work in the schedule of values.



AIA Document A102™ – 2007 (formerly A111™ – 1997). Copyright © 1920, 1925, 1951, 1958, 1961, 1963, 1967, 1974, 1978, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 17:10:44 on 02/01/2017 under Order No.4557176538_1 which expires on 02/11/2017, and is not for resale.

**§ 12.1.7** Subject to other provisions of the Contract Documents, the amount of each progress payment shall be computed as follows:

.1 Take that portion of the Guaranteed Maximum Price properly allocable to completed Work as determined by multiplying the percentage of completion of each portion of the Work by the share of the Guaranteed Maximum Price allocated to that portion of the Work in the schedule of values. Pending final determination of cost to the Owner of changes in the Work, amounts not in dispute shall be included as provided in Section 7.3.9 of the General Conditions;

.2 Add that portion of the Guaranteed Maximum Price properly allocable to materials and equipment delivered and suitably stored at the site for subsequent incorporation in the Work, or if approved in advance by the Owner, suitably stored off the site at a location agreed upon in writing;

.3 Add the Contractor's Fee and its Overhead and General Requirements Costs computed upon the Cost of the Work for preceding items .1 and .2 at the rates stated in Sections 5.1.1 and 5.1.2 respectively;

.4 Subtract retainage of ten percent (10%) on all preceding items .1 through .3;

.5 Subtract the aggregate of previous payments made by the Owner;

.6 Subtract the shortfall, if any, indicated by the Contractor in the documentation required by Section 12.1.4 and 12.1.8 to substantiate prior Applications for Payment, or resulting from errors subsequently discovered by the Owner's auditors in such documentation; and

.7 Subtract amounts, if any, for which the Architect has withheld or nullified a Certificate for Payment as provided in Section 9.5 of the General Conditions and amounts withheld by the Owner's lender, and other amounts properly withheld by the Owner, at the time of each progress payment.

Once the entire Work is fifty percent (50%) complete, provided that the Contractor is not in default, retainage withheld on Applications for Payment submitted thereafter shall be reduced from ten percent (10%) to zero percent (0%) (i.e. for Applications for Payment submitted after achieving 50% completion of the Work, there shall be no further retainage withheld, such that the total retainage at Substantial Completion, subject to any earlier release of retainage consented to by the Owner in accordance with the below provisions of this paragraph, shall be 5%). Any reduction or release of retainage, or portion thereof, however, shall not be a waiver of (i) any of the Owner's rights to retainage in connection with other payments to the Contractor or (ii) any other right or remedy the Owner has under the Contract Documents, at law or in equity.

**§ 12.1.8** As an express condition precedent to the Owner's obligation to make any progress payment to the Contractor, the Contractor must provide the following:

.1 A fully executed Application for Payment using AIA Documents G702 and G703, or such other form as is approved by the Owner, based on the approved schedule of values;

.2 A properly-completed sworn statement from the Contractor in the form attached hereto as **Exhibit G**;

.3 A certification by the Contractor that all amounts previously paid by the Owner to the Contractor have been used to pay the amounts owed by the Contractor to Subcontractors and suppliers for labor, services and materials provided for the Work through the date which the Contractor has been paid by the Owner;

.4 A duly executed and notarized unconditional partial release of lien from the Contractor and each Subcontractor and supplier that has provided a Notice to Owner and, at the Owner's request, from all other Subcontractors and suppliers who have performed work for or have provided labor, services or materials to the Project, in the form attached hereto as **Exhibit H**, effective through the last date the Owner has paid the Contractor;

.5 A duly executed and notarized partial release of lien from the Contractor and each Subcontractor and supplier that has provided a Notice to Owner and, at the Owner's request, from all other Subcontractors and suppliers who have performed work for or have provided labor, services or materials to the Project, in the form attached hereto as **Exhibit I**, and conditioned only upon receipt of payment of the amount specified in the partial release of lien effective through the date of the Contractor's current Application for Payment to be paid;

.6 Copies of Subcontractor draw requests for which payment is requested;

.7 All new Change Orders executed since the last progress payment and the Change Order Log, including a list of any Change Orders contemplated or under negotiation at the date of such payment request;

.8 Copy of monthly progress report;

.9 An updated Construction Schedule;



**AIA Document A102™ – 2007 (formerly A111™ – 1997). Copyright © 1920, 1925, 1951, 1958, 1961, 1963, 1967, 1974, 1978, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 17:10:44 on 02/01/2017 under Order No.4557178538_1 which expires on 02/11/2017, and is not for resale.

**.10** An updated schedule of values and updated draw schedule;
**.11** A consent of surety, if required by Owner in its sole discretion;
**.12** Delivery tickets and/or other documents establishing that all materials, equipment and other personal property not yet incorporated into the Project but for which payment is sought are then situated on the Project site and secured in a manner acceptable to Owner and its lender;
**.13** All required evidence of the insurance identified in the Contract Documents (to the extent not previously provided);
**.14** Such other information, documentation and materials the Owner, Architect, Owner's construction lender, if any, the FHFC, or the title company that is responsible for issuing endorsements to the Owner's lender's title policy may reasonably require and is reasonably within the Contractor's possession, custody or control; and
**.15** if the Owner has a lender for the Project, the Owner's lender has approved Contractor's Application for Payment and the Owner's lender has disbursed to or for the benefit of the Owner that portion of the Contractor's final payment to be paid from the construction loan funds; provided, however, this condition precedent shall be excused if the lender's failure to disburse construction loan proceeds is determined to be caused by, or by someone on behalf of, the Owner (other than the Contractor or those for whom the Contractor is responsible). Upon approval of the pay application by the Owner, the Architect, and the Owner's lender, the Owner's lender or its fiscal or escrow agent shall provide payment directly to Contractor.

**§ 12.1.9** In taking action on the Contractor's Applications for Payment, the Architect shall be entitled to rely on the accuracy and completeness of the information furnished by the Contractor and shall not be deemed to represent that the Architect has made a detailed examination, audit or arithmetic verification of the documentation submitted in accordance with Section 12.1.4 or other supporting data; that the Architect has made exhaustive or continuous on-site inspections; or that the Architect has made examinations to ascertain how or for what purposes the Contractor has used amounts previously paid on account of the Contract. Such examinations, audits and verifications, if required by the Owner, will be performed by the Owner's auditors acting in the sole interest of the Owner.

**§ 12.1.10** The Owner and the Contractor shall agree upon a (1) mutually acceptable procedure for review and approval of payments to Subcontractors and (2) the percentage of retainage held on Subcontracts, and the Contractor shall execute subcontracts in accordance with those agreements. Except with the Owner's prior written approval, payments to Subcontractors shall be subject to retention of not less than ten percent (10%). Upon mutual written agreement between Owner and the Contractor and before the Project's Substantial Completion date, reduction of retainage or payment in full, including release of applicable retainage, may be made to the Contractor for a particular Subcontractor's Work that is fully and satisfactorily completed, provided that the Contractor and Subcontractor provide a satisfactory complete release of all claims for such Work and provided that both have complied with all requirements for final payment in accordance with the Contract Documents.

**§ 12.1.11** Each Application for Payment shall constitute a certification and representation by the Contractor to the Owner that: (i) the construction has progressed to the point indicated; (ii) the quality of the Work covered by the Application is in accordance with the Contract Documents; (iii) the draw requests and supplier invoices delivered by the Contractor to the Owner identify all Subcontractors and suppliers providing labor, services or materials to the Contractor for performance of the Work and the amounts owed to each Subcontractor and supplier; (iv) duly executed waivers and releases have been obtained from all Subcontractors and suppliers for work done and materials furnished through the last date of payment from the Owner for such Subcontractors and suppliers; (v) the Contractor is entitled to payment in the amount requested; (vi) such Application represents a just estimate of cost reimbursable to Contractor under the terms of the Contract Documents; (vii) such Application has not been front-end-loaded either by the Contractor or by any of its Subcontractors (including placing a value on a line item that is in excess of its cost, increasing unit prices on early completed items while decreasing unit prices on later completed ones, and/or inflating the percentage of completion on line items); (viii) there are no liens or claims outstanding or known to exist at the date of the Application; and (ix) all due and payable bills with respect to the Work have been paid to date or included in the amount requested in the current Application, and there is no known basis for the filing of any construction liens or claims or any other lien or claim on the Work. If any lienors under the Contractor, including Subcontractors, Sub-subcontractors, material suppliers or laborers, entitled to assert a lien against the Owner's property refuse to furnish a release or waiver required by the Owner, payment may be withheld by Owner on



AIA Document A102™ – 2007 (formerly A111™ – 1997). Copyright © 1920, 1925, 1951, 1958, 1961, 1963, 1967, 1974, 1978, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 17:10:44 on 02/01/2017 under Order No.4557178538_1 which expires on 02/11/2017, and is not for resale.

account thereof while the remainder is paid, unless the Contractor furnishes a bond satisfactory to the Owner to indemnify the Owner (and its lender, if any) against such lien.

**§ 12.1.12** The Contractor shall not submit any Application for Payment which seeks payment for any Cost of Work payable to a Subcontractor or supplier that the Contractor does not intend to pay to the Subcontractor or supplier. If after receipt of any payment for Cost of Work performed by a Subcontractor or supplier the Contractor determines to withhold payment from any Subcontractor or supplier, in whole or in part, the Contractor shall promptly return such amount to the Owner, unless the surety providing the payment and performance bonds and the Owner's lender consent in writing to the Contractor retaining such amount for purposes of resolving the claim with the Subcontractor or supplier. Further, in any event, the Contractor shall return any amount withheld to the Owner and not paid to the applicable Subcontractor or supplier within thirty (30) days after the amount was paid by the Owner to the Contractor.

**§ 12.2 FINAL PAYMENT**

**§ 12.2.1** Final payment, constituting the entire unpaid balance of the Contract Sum, including retainage, shall be made by the Owner to the Contractor when:

**.1** the Contractor has fully performed the Contract, including completion of all punch list Work, except for the Contractor's responsibility to correct Work as provided in Section 12.2.2 of the General Conditions, and to satisfy other requirements, if any, which extend beyond final payment;

**.2** The Architect has issued its final Certificate for Payment;

**.3** the Contractor has submitted a final accounting for the Cost of the Work and a final Application for Payment and Owner's auditors have completed their review and delivered their report in accordance with Section 12.2.2 below;

**.4** the Contractor has delivered to the Owner evidence reasonably acceptable to the Owner that the Work has passed all requisite governmental inspections and Contractor has undertaken everything necessary to ensure that all permits have been closed-out;

**.5** the Contractor has delivered to the Owner a complete indexed set, in such format as required by the Owner, of all maintenance manuals, test and inspection reports, permits, and temporary and final certificates of completion or occupancy, as applicable, and third-party warranty documents applicable to the Work;

**.6** the Contractor has delivered all Record Drawings and Record Documents as required by Section 3.11 of the General Conditions;

**.7** the Contractor has delivered to the Owner a duly executed and notarized Contractor's final payment affidavit in statutory form and confirming that all payrolls, bills for materials and equipment, and other indebtedness connected with the Work for which the Owner or the Owner's property might be responsible or encumbered (less amounts withheld by Owner) have been paid or otherwise satisfied;

**.8** the Contractor has delivered to the Owner duly executed and notarized final waivers and lien releases, in the form attached hereto as **Exhibit J**, from the Contractor and all Subcontractors and suppliers who have delivered a Notice to Owner and, at the Owner's request, all other Subcontractors and suppliers who have performed work for or have provided, labor, services or materials to the Project;

**.9** the Contractor has delivered to the Owner the consent to final payment from any surety issuing a performance bond or payment bond required by Owner or naming Owner as obligee;

**.10** the Contractor has delivered to the Owner a complete list of Subcontractors and suppliers on the Project, including addresses and telephone numbers;

**.11** the Contractor has delivered to the Owner a duly completed AIA Document G706 and G706A with all required supporting information attached;

**.12** the Contractor has delivered to the Owner evidence reasonably satisfactory to the Owner that insurance required by the Contract Documents to remain in force after final payment is currently in effect and will not be canceled or allowed to expire until at least 30 days' prior written notice has been given to the Owner, as well as a written statement that the Contractor knows of no substantial reason that the insurance will not be renewable to cover the period up to and including the expiration of the applicable statute of repose;

**.13** the Contractor has delivered to the Owner any and all other items required by the Contract Documents, including those specified in Section 9.10.2 of the General Conditions;

**.14** the Contractor has delivered to the Owner evidence that all training, testing balancing and HVAC commissioning has been completed in accordance with the Contract Documents;

Init.

/

**AIA Document A102™ – 2007 (formerly A111™ – 1997).** Copyright © 1920, 1925, 1951, 1958, 1961, 1963, 1967, 1974, 1978, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved.** WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 17:10:44 on 02/01/2017 under Order No.4557178538_1 which expires on 02/11/2017, and is not for resale.

.15 the Contractor has completed its final site clean-up and restoration, including removal of all excess materials, rock, sand, paving and miscellaneous debris, supplies, equipment and trailers;

.16 all temporary utilities (if any) are disconnected;

.17 the Contractor has delivered a "Cost Certification" in accordance the instructions and form contained in **Exhibit N**, attached hereto and incorporated herein by reference;

.18 the Contractor has delivered such other information, documentation, and materials as the Owner, the Architect, the Owner's lender, if any, or the title company that is responsible for issuing endorsements to the Owner's lender's title policy may reasonably require; and

.19 if the Owner has a lender for the Project, the Owner's lender has approved Contractor's Final Application for Payment and the Owner's lender has disbursed to or for the benefit of the Owner that portion of the Contractor's final payment to be paid from the construction loan funds; provided, however, this condition precedent shall be excused if the lender's failure to disburse construction loan proceeds is determined to be caused by, or by someone on behalf of, the Owner (other than the Contractor or those for whom the Contractor is responsible).

**§ 12.2.2** The Owner's auditors will review and report in writing on the Contractor's final accounting within thirty (30) days after delivery of the final accounting to the Owner and the Architect by the Contractor. Based upon such Cost of the Work as the Owner's auditors report to be substantiated by the Contractor's final accounting, and provided the other conditions of Section 12.2.1 have been met, the Architect will, within seven (7) days after receipt of the written report of the Owner's auditors, either issue to the Owner a final Certificate for Payment with a copy to the Contractor, or notify the Contractor and Owner in writing of the Architect's reasons for withholding a certificate as provided in Section 9.5.1 of the General Conditions. The time periods stated in this Section 12.2.2 supersede those stated in Section 9.4.1 of the General Conditions.

**§ 12.2.3** If the Owner's auditors report the Cost of the Work as substantiated by the Contractor's final accounting to be less than claimed by the Contractor, the Contractor shall be entitled to request mediation of the disputed amount without seeking an initial decision pursuant to Section 15.2 of the General Conditions. A request for mediation shall be made by the Contractor within 30 days after the Contractor's receipt of a copy of the Architect's final Certificate for Payment. Failure to request mediation within this 30 day period shall result in the substantiated amount reported by the Owner's auditors becoming binding on the Contractor. Pending a final resolution of the disputed amount, and subject to satisfaction of all other conditions precedent to final payment, the Owner shall pay the Contractor the amount certified in the Architect's final Certificate for Payment.

**§ 12.2.4** The Owner's final payment to the Contractor shall be made no later than thirty (30) days after the satisfaction of the conditions set forth in § 12.2.1 above.

**§ 12.2.5** If, subsequent to final payment and at the Owner's request, the Contractor incurs costs described in Article 7 and not excluded by Article 8 to correct damaged Work, the Owner shall reimburse the Contractor such costs and the Contractor's Fee applicable thereto on the same basis as if such costs had been incurred prior to final payment, but not in excess of the Guaranteed Maximum Price. If the Contractor has participated in savings as provided in Section 5.2, the amount of such savings shall be recalculated and appropriate credit given to the Owner in determining the net amount to be paid by the Owner to the Contractor.

**§ 12.2.6** Notwithstanding any provision in this Agreement to the contrary, if the Owner elects to finance the Work, the Owner's obligation to make any payment due hereunder to the Contractor, progress or final payment, shall be subject to the express condition precedent that Owner's lender has approved the Contractor's Application for Payment including the amounts requested for payment and has disbursed construction loan proceeds to or for the benefit of the Owner on account of the Contractor's Application for Payment. However, this condition precedent shall be excused if the lender's failure to disburse construction loan proceeds is determined to be caused by, or by someone on behalf of, the Owner (other than the Contractor or those for whom the Contractor is responsible).

## ARTICLE 13 DISPUTE RESOLUTION

**§ 13.1**

*(Paragraphs deleted)*

**INTENTIONALLY DELETED**



AIA Document A102™ – 2007 (formerly A111™ – 1997). Copyright © 1920, 1925, 1951, 1958, 1961, 1963, 1967, 1974, 1978, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 17:10:44 on 02/01/2017 under Order No.4557176538_1 which expires on 02/11/2017, and is not for resale.

**§ 13.2 BINDING DISPUTE RESOLUTION**
Determination of which party is the prevailing party shall be made by the Arbitrator, taking into account such considerations as the quantum of the Claims asserted and defended, and which party achieved greater success by quantifying the amounts awarded the party recovering damages and comparing such amounts with the amounts that the party paying damages saved (i.e. the damages actually awarded versus the damages that were claimed).

**§ 13.5 JOINDER**
*(Paragraphs deleted)*
In the event the dispute resolution procedure applicable to another dispute between the Owner and another party regarding the Project is different from the procedure specified in this Agreement, then the Contractor hereby consents, if requested by the Owner, to its joinder in such dispute resolution proceeding, provided that the dispute resolution proceeding involves substantially common questions of law or fact. The Contractor shall include a substantially similar provision in its agreements with the Contractor's Subcontractors.

**§ 13.6 CHAPTER 558, FLORIDA STATUTES**
THE PARTIES EXPRESSLY AGREE THAT THE PROVISIONS OF CHAPTER 558, FLORIDA STATUTES, SHALL NOT APPLY TO THIS AGREEMENT OR ANY DISPUTE RELATING TO IT OR THE PROJECT.

**ARTICLE 14 TERMINATION OR SUSPENSION**
**§ 14.1** Subject to the provisions of Section 14.2 below, the Contract may be terminated by the Owner or the Contractor as provided in Article 14 of the General Conditions following written notice and an opportunity to cure as detailed in the General Conditions.

**§ 14.2** If the Owner terminates the Contract for cause as provided in Article 14 of the General Conditions, the amount, if any, to be paid to the Contractor under Section 14.2.4 of the General Conditions shall not cause the Guaranteed Maximum Price to be exceeded, nor shall it exceed an amount calculated as follows:

- **.1** Take the Cost of the Work incurred by the Contractor to the date of termination;
- **.2** Add the Contractor's Fee Overhead and General Requirements Costs computed upon the Cost of the Work to the date of termination at the rates stated in Sections 5.1.1 and 5.1.2, respectively; and
- **.3** Subtract the aggregate of previous payments made by the Owner and other amounts, if any, properly withheld by the Owner pursuant to the Contract Documents.

**§ 14.3** The Owner shall also pay the Contractor fair compensation, either by purchase or rental at the election of the Owner, for any equipment owned by the Contractor that the Owner elects to retain and that is not otherwise included in the Cost of the Work under Section 14.2.1. To the extent that the Owner elects to take legal assignment of subcontracts and purchase orders (including rental agreements), the Contractor shall, as a condition of receiving the payments referred to in this Article 14, execute and deliver all such papers and take all such steps, including the legal assignment of such subcontracts and other contractual rights of the Contractor, as the Owner may require for the purpose of fully vesting in the Owner the rights and benefits of the Contractor under such subcontracts or purchase orders.

**§ 14.4** The Work may be suspended by the Owner as provided in Article 14 of the General Conditions; in such case, the Guaranteed Maximum Price and Contract Time shall be increased as provided in Section 14.3.2 of the General Conditions.

**ARTICLE 15 MISCELLANEOUS PROVISIONS**
**§ 15.1** Where reference is made in this Agreement to a provision of the General Conditions or another Contract Document, the reference refers to that provision as amended or supplemented by other provisions of the Contract Documents.

**§ 15.2** Payments due and unpaid under the Contract shall bear interest from the date payment is due at the legal rate prevailing from time to time at the place where the Project is located.
*(Paragraphs deleted)*

**§ 15.3** The Owner's representative:
*(Name, address and other information)*

Init.

/

AIA Document A102™ – 2007 (formerly A111™ – 1997). Copyright © 1920, 1925, 1951, 1958, 1961, 1963, 1967, 1974, 1978, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 17:10:44 on 02/01/2017 under Order No.4557178538_1 which expires on 02/11/2017, and is not for resale.

see page 1

**§ 15.4** The Contractor's representative:
*(Name, address and other information)*

see page 1

**§ 15.5** Neither the Owner's nor the Contractor's representative shall be changed without ten days' written notice to the other party.

**§ 15.6** Other provisions:

**§ 15.6.1** The Contractor represents and warrants the following to the Owner (in addition to any other representations and warranties contained in the Contract Documents) as an inducement to the Owner to execute this Agreement, which representations and warranties shall survive the execution and delivery of this Agreement, any termination of this Agreement and the final completion of the Work that: (a) it and it Subcontractors have and shall maintain during the prosecution of the Work all requisite licenses, permits and approvals necessary to perform the Work (and the Contractor shall provide a copy of such licenses, permits and approvals to the Owner upon the Owner's request); (b) its duly-authorized representative has visited the site of the Project, is familiar with the local and special conditions under which the Work is to be performed, and has correlated onsite observations with the requirements of the Contract Documents; (c) it possesses a high level of experience and expertise in the construction of projects of the size, complexity and nature of this particular Project and that it will perform the Work with care, skill and diligence of such a Contractor; (d) it has reviewed the Contract Documents, including the Drawings and Specifications identified in the Index of Drawings and Index of Specifications, attached hereto as **Exhibit D**, and incorporated herein by reference, (e) it will not use "Chinese Drywall" in the performance of the Work; (f) subject to Section 2.2.2 of the General Conditions, it has included in the GMP all permits required by any authorities having jurisdiction ("AHJ") over the Work, other than the initial building permit, which shall be procured by the Owner at the Owner's cost, and shall provide all labor, services and materials as may be required by any AHJ as a condition for issuance of a Certificate of Occupancy for each Portion of Work and the entire Work; and (g) that it has made or, prior to engaging the applicable Subcontractor(s), will make reasonable any inquiry to confirm that its Subcontractors are financially solvent and possessed of sufficient working capital to complete the Work and perform all obligations hereunder.

**§ 15.6.2** The partial or complete invalidity of any one or more provisions of this Agreement shall not affect the validity or continuing force and effect of any other provision. If any provision of this Agreement or the application thereof to any person or circumstance shall be determined to be invalid or unenforceable, the remaining provisions of this Agreement, or the application of such provision to persons or circumstances other than those to which it is held invalid or unenforceable, shall not be affected thereby and shall be valid and enforceable to the fullest extent permitted by law.

**§ 15.6.3** The failure of a party to insist, in any one or more instances, upon the performance of any of the terms, covenants or conditions of this Agreement, or to exercise any right herein, shall not be construed as a waiver or relinquishment of such term, covenant, condition or right as respects further performance. The provisions of the Contract Documents shall not be changed, amended, waived or otherwise modified in any respect except by a writing signed by the Owner.

**§ 15.6.4** This Agreement may be executed in counterparts, and a complete set of such executed counterparts shall constitute the same Agreement, and the signature of any party to any counterpart shall be deemed as signature to, and may be appended to, another counterpart. For purposes of executing this Agreement, a document signed and transmitted by facsimile or by emailed PDF scan shall be treated as an original document. The signature of any party on a faxed or emailed PDF scanned version of this Agreement shall be considered as an original signature and the document transmitted shall be considered to have the same binding legal effect as if it were originally signed. At the request of either party, any facsimile or PDF scanned document shall be re-executed by both parties in original form. No party to this Agreement may raise the use of facsimile, emailed PDF scan or the fact that any signature was transmitted by facsimile or email as a defense to the enforcement of this Agreement or any amendment executed in compliance with this Section.

Init.

/

**AIA Document A102™ – 2007 (formerly A111™ – 1997).** Copyright © 1920, 1925, 1951, 1958, 1961, 1963, 1967, 1974, 1978, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved.** WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 17:10:44 on 02/01/2017 under Order No.4557176538_1 which expires on 02/11/2017, and is not for resale.

**§ 15.6.5** In the Contract Documents, the singular shall include the plural, the plural the singular, and the use of any gender shall include all genders. Unless the context of the Contract Documents otherwise clearly requires, references to the plural include the singular, the term "including" is not limiting and the terms "hereof," "herein," "hereunder" and similar terms in the Contract Documents refer to the Contract Documents as a whole and not to any particular provision of the Contract Documents unless stated otherwise. Each party, together with their respective legal counsel, has contributed substantially to the preparation of this Agreement, and, as such, this Agreement shall not be interpreted more favorably against one party than the other solely upon the basis of which party actually drafted this Agreement. Headings are for convenience only and shall not be used for interpretation of the language in the Contract Documents.

**§ 15.6.6** The Contractor acknowledges that the Owner may elect to finance the Work with a loan from one or more lenders. The Contractor agrees to make such revisions to this Agreement and the Contract Documents and execute and deliver to the Owner documents, including the Consent to Assignment of Construction Contract attached hereto and incorporated herein by reference as **Exhibit M,** as may be reasonably required by such lenders or their agents, provided that such revisions and documents (a) are provided to Contractor prior to the execution of this Agreement or (b) do not materially alter the Contractor's rights and obligations under the Contract. In order to perform under the Contract Documents, the Owner must comply with certain terms and conditions embodied in its lenders' construction loan agreement(s). The Contractor agrees to use its best efforts to comply with the requirements of the Owner's lenders that bear upon the performance of the Work. The Contractor shall also:

**.1** Make the site of the Work available at reasonable times for inspection by the Owner's lenders and their representatives;

**.2** Consent to and execute all documents reasonably requested by the Owner in connection with the assignment of this Agreement and the Drawings and Specifications to its lenders for collateral purposes. Such assignment shall provide that the Contractor agrees that notwithstanding a default by the Owner under the provisions of this Agreement that would give the Contractor the right to terminate this Agreement, the Contractor will continue to perform its obligations hereunder (on the same terms and conditions as are set forth herein) for and on account of such lenders, provided that the lenders shall agree to pay the Contractor all amounts due and owing the Contractor under the Agreement accruing after such lender accepts assignment of the Contract in the same manner provided for under the Agreement. All subcontracts and purchase agreements shall contain a right of assignment to the Owner without consent of the Subcontractor or supplier; and

**.3** Promptly furnish the Owner with information, documents, and materials that the Owner may reasonably request from time to time in order to comply with the requirements of its lenders.

**§ 15.6.7** To the extent the Contractor has performed work or services for the Project before execution of this Agreement (such as any pre-construction value engineering, constructability reviews, cost estimating and similar services), all rights and liabilities of the parties for performance of the prior work and services are merged and included within and shall be governed by the terms and conditions of this Agreement. No compensation is due the Contractor for any such work or services.

## ARTICLE 16 ENUMERATION OF CONTRACT DOCUMENTS

**§ 16.1** The Contract Documents, except for Modifications issued after execution of this Agreement, are enumerated in the sections below.

**§ 16.1.1** The Agreement is this executed AIA Document A102–2007, Standard Form of Agreement Between Owner and Contractor.

**§ 16.1.2** The General Conditions are AIA Document A201–2007, General Conditions of the Contract for Construction, in the modified form attached hereto and incorporated herein as **Exhibit A.**

**§ 16.1.3** The Supplementary and other Conditions of the Contract: None.
*(Table deleted)*
**§ 16.1.4** The Specifications:
*(Either list the Specifications here or refer to an exhibit attached to this Agreement.)*
See index attached hereto and incorporated herein as **Exhibit D.**
*(Table deleted)*

Init.
/

AIA Document A102™ – 2007 (formerly A111™ – 1997). Copyright © 1920, 1925, 1951, 1958, 1961, 1963, 1967, 1974, 1978, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 17:10:44 on 02/01/2017 under Order No.4557178538_1 which expires on 02/11/2017, and is not for resale.

**§ 16.1.5** The Drawings:
*(Either list the Drawings here or refer to an exhibit attached to this Agreement.)*
See index attached hereto and incorporated herein as **Exhibit D**.
*(Table deleted)*
**§ 16.1.6** The Addenda, if any:

*(Table deleted)*
Portions of Addenda relating to bidding requirements are not part of the Contract Documents unless the bidding requirements are also enumerated in this Article 16.

**§ 16.1.7** Additional documents, if any, forming part of the Contract Documents:

**.1** AIA Document E201™–2007, Digital Data Protocol Exhibit, if completed by the parties, or the following:

**.2** Other documents, if any, listed below:
*(List here any additional documents that are intended to form part of the Contract Documents. AIA Document A201–2007 provides that bidding requirements such as advertisement or invitation to bid, Instructions to Bidders, sample forms and the Contractor's bid are not part of the Contract Documents unless enumerated in this Agreement. They should be listed here only if intended to be part of the Contract Documents.)*

**Exhibit A** – General Conditions of the Contract for Construction;
**Exhibit B** – Construction Schedule;
**Exhibit C** – Schedule of Values;
**Exhibit D** -- Index of Drawings and Specifications;
**Exhibit E** – Not Used;
**Exhibit F** – Not Used;
**Exhibit G** – Form of Contractor's Sworn Statement;
**Exhibit H**– Form of Waiver and Release of Lien Upon Progress Payment (Unconditional);
**Exhibit I** – Form of Waiver and Release of Lien Upon Progress Payment (Conditional);
**Exhibit J** – Form of Waiver and Release of Lien Upon Final Payment;
**Exhibit K** – Forms of Payment and Performance Bonds;
**Exhibit L** – Not Used;
**Exhibit M** - Consent to Assignment of Construction Contract;
**Exhibit N** - General Contractor Cost Certification (form and instructions); and
**Exhibit O** – Subcontractor Insurance Requirements.

In the event of any conflict between the terms of this Agreement and the terms of any of the other Contract Documents, or a conflict among any of the Contract Documents themselves, the Contract Documents shall be construed in accordance with the priorities set forth below, with the "First Priority" being the highest priority.

First Priority: Modifications to the Contract, with Modifications of a later date taking precedence over Modifications of an earlier date;

Second Priority: This Agreement, including Exhibit C hereto but excepting and excluding those Exhibits listed as a different priority in this list;

Third Priority: General Conditions to the Contract for Construction;

Fourth Priority: Contractor's Qualifications, Clarifications, Assumptions and Exclusions;

Fifth Priority: Exhibits B, G, H, I, J, K, M, N and O;

Sixth Priority: Addenda;


AIA Document A102™ – 2007 (formerly A111™ – 1997). Copyright © 1920, 1925, 1951, 1958, 1961, 1963, 1967, 1974, 1978, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 17:10:44 on 02/01/2017 under Order No.4557178538_1 which expires on 02/11/2017, and is not for resale.

Seventh Priority: The Drawings (with detailed Drawings taking precedence over large scale Drawings, noted dimensions on the Drawings shall control over scaled dimensions and noted materials shall control over graphic indications);

Eighth Priority: The Specifications; and

Ninth Priority: Other documents specifically enumerated in the Agreement as part of the Contract Documents.

In the event of conflicts within the terms of any Contract Document itself or in the terms of any Contract Documents sharing the same priority, the provision granting the greater rights or remedies to the Owner, or imposing the greater duty, standard, responsibility or obligation on the Contractor, as determined by the Owner, shall govern.

## ARTICLE 17 INSURANCE AND BONDS

**§ 17.1** The Contractor shall purchase and maintain insurance and provide bonds, each as set forth in Article 11 of the General Conditions and below.

*(State bonding requirements, if any, and limits of liability for insurance required in Article 11 of AIA Document A201–2007.)*

| TYPE OF INSURANCE OR BOND | LIMIT OF LIABILITY OR BOND AMOUNT |
|---|---|
| **Worker's Compensation** | Full Statutory Limits as required by laws of the State in which the Project is located and Federal law, if applicable |
| **Employer's Liability** | |
| Bodily injury by Accident, each Accident | Not less than $1,000,000 |
| Bodily injury by Disease, each employee | Not less than $1,000,000 |
| Bodily Injury by Disease, policy limit | Not less than $1,000,000 |
| | |
| **Commercial General Liability** endorsed to state that limits apply to the Project separately written on ISO occurrence form CG 00 01 (10 93) or substitute form providing equivalent coverage, INCLUDING coverage for damages because of BODILY INJURY, including disease, illness and death, PROPERTY DAMAGE, FIRE LEGAL LIABILITY, INDEPENDENT CONTRACTORS LIABILITY COVERAGE, PREMISES/OPERATIONS, POLLUTION (provided that policies that exclude pollution coverage shall be accepted provided, further, that such policies include Endorsement CG 21 65 or CG 21 55, or their equivalent), CONTRACTUAL LIABILITY insuring the Contractor's indemnification obligations under the Contract and including the tort liability of another assumed in a business contract) and PERSONAL AND ADVERTISING INJURY. This insurance shall include, coverage for the PRODUCTS/COMPLETED OPERATIONS HAZARD | |
| a. Per occurrence | Not less than $1,000,000 |



AIA Document A102™ – 2007 (formerly A111™ – 1997). Copyright © 1920, 1925, 1951, 1958, 1961, 1963, 1967, 1974, 1978, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 17:10:44 on 02/01/2017 under Order No.4557176538_1 which expires on 02/11/2017, and is not for resale.

| | |
|---|---|
| b. General aggregate/Products Completed Operations Aggregate | Not less than $2,000,000 |
| c. Personal Injury and Advertising Injury (with Employment Exclusion deleted) | Not less than $1,000,000 |
| d. Products-Completed Operations | Not less than $2,000,000 |
| e. Damage to Rented Premises | Not less than $500,000 |
| f. Fire Damage Limit | Not less than $100,000 |
| g. Medical Expense (any one person) | Not less than $10,000 |
| | |
| **Automobile Liability Insurance** (owned/leased, non-owned and hired) written on ISO form CA 01 01 or a substitute form providing equivalent coverage, protecting against claims for bodily injury, including illness, disease and death, and property damage caused by an occurrence arising out of or in consequence of the performance of the Contract by the Contractor, a Subcontractor or anyone employed by either. | |
| a. Combined single limit | Not less than $2,000,000 |
| | |
| **Excess/Umbrella Liability policy** (that is not more restrictive than the primary insurance and that shall provide follow form coverage excess of the Employers Liability, Commercial General Liability and Automobile Liability coverages required herein and shall "drop down" for defense and indemnity in the event of exhaustion of the underlying insurance) | |
| a. per occurrence | Not less than $10,000,000 |
| b. general aggregate | Not less than $10,000,000 |
| c. products/completed operations aggregate | Not less than $10,000,000 |
| | |
| **Property insurance** | providing coverage for property in which the Contractor retains the risk of loss including its own equipment, (stationary or mobile), tools (including employee tools), supplies, materials, or any other property owned or leased by the Contractor. |
| | |
| **Professional Liability Insurance** (shall be provided to the extent the Contractor's performance includes or requires professional services, including the stamping by a professional engineer (P.E.) or the submission of working drawings) | Not less than $2,000,000 per claim/$4,000,000 aggregate |
| | |
| **Pollution Liability Insurance** (providing coverage for liability arising from, or | Not less than $1,000,000 each loss / $2,000,000 aggregate |



**AIA Document A102™ – 2007 (formerly A111™ – 1997).** Copyright © 1920, 1925, 1951, 1958, 1961, 1963, 1967, 1974, 1978, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING:** This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 17:10:44 on 02/01/2017 under Order No.4557176538_1 which expires on 02/11/2017, and is not for resale.

| | |
|---|---|
| made worse by, the Work or the Contractor's or its Subcontractors' construction activities, which insurance shall cover property damage, bodily injury (including death and disease), environmental damage, remediation, clean-up costs and defense costs) | |
| **Insurance Required by Law** (the Contractor shall maintain any and all additional insurance coverages as required by Florida law) | |
| | The limits of insurance provided by the Contractor shall be the greater of the limits maintained in the normal course of the Contractor's business or the minimum limits specified above. The limits of insurance stated above for each type of insurance are minimum limits only; in the event the Contractor's policy provides greater limits, then the additional insureds shall be entitled to, or to share in, the full limits of such policy, and this Agreement shall be deemed to require such full limits. |

**§ 17.2** The general aggregate for the Commercial General Liability and Excess/Umbrella Liability insurance policies shall be on a "per project" basis, and a statement to that effect will be contained on the certificate that such policies have been so endorsed. The Contractor shall maintain the Commercial General Liability and Excess/Umbrella Liability insurance policies from commencement of the Work until the expiration of the applicable statute of repose in the jurisdiction where the Project is located.

**§ 17.3** The COMMERCIAL GENERAL LIABLITY INSURANCE COVERAGE shall not be subject to any exclusions or exclusory endorsements that are not acceptable to the Owner, in its sole discretion. The COMMERCIAL GENERAL LIABILITY INSURANCE COVERAGE shall also comply with the following terms: (a) no modification of the ISO standard "insured contract" exception to the contractual liability exclusion; (b) no exclusion or limitation of coverage for injury to employees or independent contractors other than that contained in the standard coverage ISO form; (c) no deletion of or modification to the subcontractor exception to the "damage to your work" exclusion; and (d) no modification to the ISO standard "occurrence" definition. If the COMMERCIAL GENERAL LIABILITY INSURANCE COVERAGE excludes or limits coverage because of a WRAP policy (e.g. CCIP or OCIP) covering the Project, that exclusion or limitation may only apply to the extent of valid and collectible insurance available from the WRAP policy. Furthermore, without limitation, the COMMERCIAL GENERAL LIABLITY INSURANCE COVERAGE shall not exclude coverage for the following: (i) residential construction; (ii) condominiums; (iii) cross lawsuits and cross claims; (iv) explosion, collapse and underground hazards; (v) pollution; or (vi) conditions on coverage based on any insured's compliance with risk transfer mechanisms through insurance, indemnity clauses, or otherwise.

**§ 17.4** The Contractor shall require in its subcontracts with Subcontractors that such Subcontractors purchase and maintain insurance in the types and amounts specified on **Exhibit O**, attached hereto and incorporated herein by reference, or in such other types and amounts as may be approved by the Owner in writing.

**§ 17.5** Before permitting any of its Subcontractors to perform any Work, the Contractor shall obtain and deliver to the Owner evidence of insurance reasonably satisfactory to the Owner from each such Subcontractor evidencing that such Subcontractor has obtained the required minimum insurance and has added the Owner, the Owner's lenders, and their respective parents, subsidiaries and affiliates, and the respective officers, directors, members, managers, partners, agents, employees, successors and assigns of any of them (*i.e.* the Indemnitees) as additional insureds on all of its insurance policies other than Worker's Compensation and Professional Liability, if applicable, pursuant to specific additional insured endorsements (as opposed to blanket endorsements). All policies of Subcontractors shall include a waiver of any right of subrogation of the insurers thereunder against the Contractor and the additional insureds.

Init.

/

**AIA Document A102™ – 2007 (formerly A111™ – 1997).** Copyright © 1920, 1925, 1951, 1958, 1961, 1963, 1967, 1974, 1978, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING:** This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 17:10:44 on 02/01/2017 under Order No.4557176538_1 which expires on 02/11/2017, and is not for resale.

**§ 17.6** The Contractor shall furnish bonds covering faithful performance of the Contract and payment of obligations arising thereunder, which bonds shall be one hundred percent (100%) unconditional bonds in substantially the forms attached hereto as **Exhibit K** and otherwise comply with the requirements of Section 11.4 of the General Conditions. If the Owner elects to have the Contractor furnish such bonds, the Contractor shall deliver the required bonds to the Owner before the commencement of any Work at the Project site. The Contractor's payment bond shall comply with the requirements of Section 713.23, Florida Statutes. Conditional payment bonds under Section 713.245, Florida Statutes, are not acceptable. At the Owner's written election, the Contractor shall require Subcontractors with subcontract sums in excess of Two Hundred Fifty Thousand Dollars ($250,000) to provide performance and payment bonds in forms acceptable to the Contractor, the Owner and the Owner's lender, if any, with the Owner and the Owner's lender, if any, being named as additional obligees pursuant to a multiple obligee rider in form acceptable to the Owner and the Owner's lender, if any.

This Agreement entered into as of the day and year first written above.

Each of the individuals executing this Agreement represents and warrants that he or she has been duly authorized by the respective party on whose behalf he or she is executing this Agreement to execute this Agreement on such parties behalf and that once executed by him or her, this Agreement shall be valid and binding upon such party.

| | | |
|---|---|---|
| **OWNER**<br>**Civic Towers, LLLP**, a Florida limited liability limited partnership<br>**By: Civic Towers Management, LLC**, a Delaware limited liability company, its General Partner,<br><br>**By:** | | **CONTRACTOR**<br>**Pete Vicari General Contractor, L.L.C.**, a Louisiana limited liability company<br><br>**By:** [signature] |
| *(Signature)* | | *(Signature)* |
| Ryan Fuson, Manager | | Peter G. Vicari, Manager |
| *(Printed name and title)* | | *(Printed name and title)* |

Init.

/

AIA Document A102™ – 2007 (formerly A111™ – 1997). Copyright © 1920, 1925, 1951, 1958, 1961, 1963, 1967, 1974, 1978, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 17:10:44 on 02/01/2017 under Order No.4557176538_1 which expires on 02/11/2017, and is not for resale.
User Notes:



(1935825225)

**Exhibit A**

**General Conditions (modified AIA Document A201 – 2007)**

**(see attached)**

# AIA® Document A102™ – 2007

## *Standard Form of Agreement Between Owner and Contractor where the basis of payment is the Cost of the Work Plus a Fee with a Guaranteed Maximum Price*

**AGREEMENT made as of the 8 day of February in the year 2017**
*(In words, indicate day, month and year.)*

**BETWEEN the Owner:**
*(Name, legal status, address and other information)*
Civic Towers Senior, LLLP, a Florida limited liability limited partnership
329 Primrose Road #347
Burlingame, CA 94011
Attn: Ryan Fuson
Telephone: (415) 691-7470
Email: ryan@redwoodhousing.com

and the **Contractor**:
*(Name, legal status, address and other information)*
Pete Vicari General Contractor, L.L.C., a Louisiana limited liability company
Florida License No. CGC1524695
1900 Destrehan Avenue
Harvey, Louisiana 70058
Attention: Pete Vicari
Telephone: 504-347-1196
Email: pete@petevicari.com

for the following **Project**:
*(Name, location and detailed description)*
Civic Towers Senior
1400 NW 19th Street
Miami, Florida, 33125
Exterior and interior renovations of an 18-story residential facility previously known as the T.M. Alexander Apartments, consisting of 151 residential units, an 18th-floor community room, on-site management office, laundry room facility and outdoor seating area.

The **Architect**:
*(Name, legal status, address and other information)*
Perez & Perez Architects Planners, Inc., a Florida corporation
2121 Douglas Road
Miami, Florida 33125
Attn: Mario Mas
Telephone: (305) 44404545
Email: mariom@perezperez.com

The Owner and Contractor agree as follows.

**ADDITIONS AND DELETIONS:**
The author of this document has added information needed for its completion. The author may also have revised the text of the original AIA standard form. An *Additions and Deletions Report* that notes added information as well as revisions to the standard form text is available from the author and should be reviewed. A vertical line in the left margin of this document indicates where the author has added necessary information and where the author has added to or deleted from the original AIA text.

This document has important legal consequences. Consultation with an attorney is encouraged with respect to its completion or modification.

This document is not intended for use in competitive bidding.

AIA Document A201™–2007, General Conditions of the Contract for Construction, is adopted in this document by reference. Do not use with other general conditions unless this document is modified.